245 N.J. Super. 239 (1991)
584 A.2d 869
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ALTON DE SHAWN PRIDGEN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 11, 1990.
Decided January 14, 1991.
*240 Before Judges KING, LONG and STERN.
Wilfredo Caraballo, Public Defender, attorney for appellant (Donald T. Thelander, Assistant Deputy Public Defender, of counsel and on the brief).
Robert J. Del Tufo, Attorney General, attorney for respondent (Catherine A. Foddai, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by STERN, J.A.D.
*241 Defendant was indicted for murder, contrary to N.J.S.A. 2C:11-3a(1) or (2) (count one); possession of a handgun with the intent to use it unlawfully, contrary to N.J.S.A. 2C:39-4a (count two); and possession of a handgun without a permit, contrary to N.J.S.A. 2C:39-5b (count three). Following a trial by jury, defendant was convicted of the lesser included offense of aggravated manslaughter on count one and possession of a handgun without a permit. He was acquitted of the possession of a handgun for an unlawful purpose.
Defendant was sentenced to 30 years of imprisonment with a 15 year parole ineligibility on count one and to a concurrent 5 year term with two and one-half years parole ineligibility on count three. An aggregate VCCB penalty of $60.00 was also imposed.
On this appeal defendant argues:
POINT I THE TRIAL COURT'S REFUSAL TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSE OF PASSION/PROVOCATION MANSLAUGHTER AND REFUSAL TO PROPERLY INSTRUCT THE JURY ON RECKLESS MANSLAUGHTER CONSTITUTED A VIOLATION OF DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL. U.S. CONST., AMENDS. V, VI, XIV; N.J. CONST. (1947), ART. 1, PARS. 1, 9, 10.
A. Passion/Provocation Manslaughter
B. Reckless Manslaughter
POINT II THE TRIAL COURT'S ERRONEOUS INSTRUCTION TO THE JURY THAT THE DECEDENT'S STATE OF MIND WAS RELEVANT TO DETER MINE WHETHER DEFENDANT'S USE OF DEADLY FORCE WAS JUSTIFIABLE, DENIED THE DEFENDANT DUE PROCESS OF LAW AND A FAIR TRIAL. U.S. CONST., AMENDS. V, VI, XIV; N.J. CONST. (1947) ART. I, PARS. 1, 9, 10. (Not Raised Below).
POINT III TESTIMONY DURING THE STATE'S CASE AND COMMENT IN THE PROSECUTOR'S SUMMATION THAT DEFENDANT BORROWED THE PISTOL TO DO "STICK-UPS" VIOLATED EVID.R. 55 AND SO PREJUDICED DEFENDANT AS TO DENY HIM A FAIR TRIAL. (Not Raised Below).
In a pro se supplementary brief he makes similar contentions and also argues that the charge on "reckless manslaughter" was inconsistent with the definition of "reckless" in N.J.S.A. 2C:2-2b(3).
*242 Our careful review of the record satisfies us that the defendant's conviction for aggravated manslaughter must be reversed because of the trial judge's refusal to charge the jury on passion/provocation manslaughter, as requested by defendant. We find it therefore unnecessary to address the evidentiary issues raised by defendant and leave their resolution to the proofs and contentions as they develop at the retrial. We affirm the conviction for the possessory offense under count three as we find no error affecting it.

I.
We commence by reciting the critical proofs relating to the death of Thomas Martin and the issues raised on this appeal.
On December 17, 1987 at approximately 5:30 p.m., James Owens was dropped off outside of his apartment at 7 Monticello Avenue in Jersey City. At that time he saw defendant (also known as "Omar") "standing in front of the apartment." Owens invited him inside, but did not have his key. They ultimately entered when LaTrenda Thomas, who also lived there, "came down the street" with a key.
Martin (also known as "Abdul"), Barry Vonce (also known as "Kareem"), his girlfriend and a woman named Ann were in the apartment when Owens and defendant entered. LaTrenda's boyfriend, Darnell Johnson (also known as "Blood"), was sleeping in the back room. According to Vonce, both he and Martin had come over earlier to "get high."
Owens testified that defendant and Martin "started having words" immediately upon his entering the apartment.[1] The argument subsided after "two to three minutes." However, shortly thereafter, Martin came out from "behind the bar" and the exchange elevated to an "unmanageable" level with Martin making "threatening remarks" towards defendant.
*243 Owens further testified that he was between the two when he heard defendant state, "You better step forward before you get it too." Owens stepped forward and saw defendant's "coat go back" to reveal "something dark from behind his coat  something long," before defendant shot Martin.
Vonce testified that the decedent and defendant had been arguing prior to the latter's entry into the apartment. Vonce and Martin tried to keep defendant outside the apartment, but defendant ultimately gained access with Owens. The two argued immediately upon defendant's entry and Martin "tried to push him out."
According to Vonce, Martin "was the more loud one" and defendant "didn't say too much," Martin "entered the center of the room [and] still continued on to say what he would do to" defendant by making "threats". In response, defendant was heard to say, "[y]ou won't do nothing to me" and "I don't want to argue with you."
According to Vonce, the voices were getting "louder and kind of hotter," and as Martin was "stepping towards" defendant, Vonce saw the decedent "reaching into his coat." Vonce then saw a "butt of a gun ... a tip, like a handle." At that moment Martin told Vonce, "[g]et out of the way", whereupon Vonce "got out of the way" and heard a shot fired.
Vonce also testified that at some point after the shooting and prior to the arrival of the police and ambulance, Martin's girl friend came to the apartment and "snatched [decedent's] coat and ran out," inferentially with his gun. The defendant left "right after the incident took place" and no one else was present at the time.
Defendant was subsequently linked to the .22 caliber magnum which caused the death by Bennie Miller who was arrested while in possession of it. Miller made a "deal" with the State and testified that defendant "gave" him the gun. Miller also testified that defendant told him he shot Martin because "he was going for his coat ... [b]ecause he was going for his gun." *244 Miller testified that Martin "was known to carry a weapon", that defendant knew that, and that decedent was always "packing a pistol." Miller further stated that Martin was a violent person and was violent "[w]ith a weapon."
Investigator Robert Calcagno testified that decedent's sister gave him a statement to the effect that Martin "had a gun on the day of the killing." Vonce testified that he saw Martin use a gun that day to rob "a kid on Monticello for the coke" while they were en route to Owens' apartment at 7 Monticello Avenue. Martin remained in Vonce's presence from the time of the robbery until they reached the apartment.

II.
Defendant submitted a written "request to charge" for instructions on "justification  self defense;" "murder  manslaughter," including imperfect self-defense, citing State v. Bowens, 108 N.J. 622, 633, 532 A.2d 215 (1987); "reckless manslaughter," including both the self defense and imperfect self-defense concepts, again citing State v. Bowens; "aggravated manslaughter," "manslaughter" and by virtue of a "killing ... committed in the heat of passion resulting from a reasonable provocation" and "intoxication negating an element of the offense." He sought that the following instructions be included:
If you find that the State has failed to convince you beyond a reasonable doubt that the defendant did not act in self-defense, you must find him not guilty. If, however, you find that the State has proven beyond a reasonable doubt that the defendant did not act in self-defense, as I have defined it for you, but you find that the defendant acted in the honest, but unreasonable belief in the necessity to use force, you may consider that evidence in determining whether he acted purposely or knowingly or whether his conscious design was to protect himself against the threat of deadly force. In other words, if you find that the defendant honestly but mistakenly resorted to self-defense, you may conclude that he acted recklessly rather than purposely and knowingly. If you should so find, then you must consider the lesser offenses of manslaughter and aggravated manslaughter....
*245 Before summations defendant orally developed his written request for a charge on "passion/provocation manslaughter", stating:
... I think the Court has to charge heat of passion manslaughter. I think it's in the case by virtue of the testimony both of Owens and of Barry Vonce that there was provocation. The jury has to decide whether or not it was just words or whether it was words and some sort of conduct that threatened Mr. Pridgen beyond mere words, and then heat, as in heat of passion, has actually been a word that's been used in conjunction with the incident itself by the witnesses, that there was action taken by Abdul [decedent], and as a result of that, things heated up and got very emotional and I think that that gets us in the area of what I referred to as common-law manslaughter and then I've  I think I've made my position clear on self-defense.
The trial judge charged the jury on murder and the lesser included offenses of aggravated manslaughter and manslaughter. However, the judge never charged the jury, as requested by defendant, on the theory of imperfect self-defense or passion/provocation manslaughter. At the conclusion of the court's instructions to the jury, defendant objected to the judge's "not instructing that the jury can consider the evidence connected to self-defense as bearing on the elements of aggravated manslaughter and manslaughter." According to counsel, "[t]hat's State v. Bowens, and I have a proposed charge that I submitted to the Court...." The prosecutor agreed that the court didn't charge that "if [defendant] held an honest but unreasonable belief, then that could go to whether it was purposeful or knowing, as to the murder" and stated "... I think the [Supreme] Court in State v. Bowens said they could use that honest but unreasonable belief to determine whether in fact the defendant acted knowingly and purposefully." Defendant insisted that the concept also applied to aggravated manslaughter and reckless manslaughter with respect to "motive." In response, the judge said that he would so "tell" the jury, even though he thought it had already been so advised. In his supplementary instructions, however, the court merely reiterated that the concept of self-defense applied with respect to all three of the charges. Nothing was ever mentioned regarding the principle of imperfect self-defense as developed in *246 Bowens. Defendant asserts that the failure to charge the jury in accordance with Bowens requires reversal of his aggravated manslaughter conviction.
In Bowens, the Supreme Court held that the Code of Criminal Justice does not recognize imperfect self-defense as an independent category of excuse, justification or mitigation. 108 N.J. at 626, 532 A.2d 215. The Legislature expressly requires defendant's conduct to be reasonable in order to provide the self-defense justification. See N.J.S.A. 2C:3-4(a), 2C:3-9 as amended by L. 1981, c. 290; State v. Bowens, supra, 108 N.J. at 629-30, 532 A.2d 215. However, as the Supreme Court noted, evidence supporting the common-law defense is "frequently relevant to the presence or absence of the essential elements of Code offenses." 108 N.J. at 626, 532 A.2d 215. Thus, in a murder prosecution,
[i]f a defendant subjectively thinks that self-defense is necessary but does not intend a fatal injury, in either the sense of knowledge or purpose, such evidence is relevant to the State's case on that issue. If a defendant is aware that his or her acts create a risk of serious harm but unreasonably disregards that risk, then, if the essential elements of the crime are present, the defendant can be found guilty of manslaughter as defined by N.J.S.A. 2C:11-4a or b, instead of murder. [108 N.J. at 641, 532 A.2d 215. (emphasis added)].
Hence, the Court recognized that an honest belief in the need for force, although not reasonable, might affect defendant's culpability, thereby warranting only an aggravated manslaughter or manslaughter conviction.[2] The elements of aggravated manslaughter and the lesser included offense of reckless manslaughter are identical, except for the difference in the degree of risk of death; an aggravated manslaughter results if the risk is a probability as opposed to a possibility. State v. Curtis, 195 N.J. Super. 354, 364, 479 A.2d 425 (App.Div.), certif. denied 99 N.J. 212, 491 A.2d 708 (1984). Accordingly, the trial court improperly failed to charge the impact of imperfect self-defense, *247 to the extent authorized in Bowens, on the murder charge.
We recognize that "reckless" conduct requires that the actor "consciously disregards a substantial and unjustifiable risk," N.J.S.A. 2C:2-2b(3). We also acknowledge that "[t]he State always has the burden of proving the essential element of the offense, and its failure to prove that defendant acted recklessly, as defined by the Code, N.J.S.A. 2C:2-2b(3), prohibits a conviction for aggravated manslaughter or manslaughter, N.J.S.A. 2C:11-4, just as the failure to prove the requisite culpability would prevent conviction for a purposeful or knowing homicide, N.J.S.A. 2C:11-3." State v. Juinta, 224 N.J. Super. 711, 723-724, 541 A.2d 284 (App.Div. 1988) certif. den. 113 N.J. 339, 550 A.2d 453 (1988). However, as noted, the 1980 amendments to the Code deleted the statutory justification of imperfect self-defense, and we do not read Bowens as holding that an honest, but unreasonable, belief in the need for force has any relation to a crime with a reckless culpability requirement. As stated in Bowens,
[w]hen we speak of mitigation in this context, we mean a generalized mitigation that would reduce murder to manslaughter, not specific evidence that bears on the substantive elements of an offense.... We are left with this indefiniteness. The Legislature has not specifically stated that an honest but unreasonable belief, although not a justification for an unlawful homicide, might nonetheless constitute a mitigation of unlawful homicide. We believe that it does not. [108 N.J. at 630-631, 532 A.2d 215].
In Bowens, the Supreme Court affirmed our reversal of defendant's conviction for murder where the trial judge failed to charge either aggravated manslaughter or manslaughter as lesser offenses. However, in the companion case of State v. Rivers, the Court affirmed the conviction for aggravated manslaughter where the jury, as here, had been charged on murder, aggravated manslaughter and reckless manslaughter. Bowens, 108 N.J. at 637, 532 A.2d 215. The Court found that the trial court had given the jury the opportunity to assess the evidence relating to "his honest, if not reasonable, belief in the necessity to use force" as it bore on the issue of whether *248 defendant acted purposely or knowingly. Id. at 636, 532 A.2d 215.[3] Thus, while the jury should have been instructed on the impact of an unreasonable but honest belief in the need to use force in self-defense, to the extent permitted in Bowens with respect to the murder charge, we nevertheless conclude that given defendant's conviction for aggravated manslaughter, an offense requiring only a reckless culpability, defendant suffered no harm or prejudice in this respect. See also State v. Coyle, 119 N.J. 194, 228, 574 A.2d 951 (1990) ("The trial court need not charge separately that `imperfect self-defense would serve to reduce murder to an unspecified degree of manslaughter.' ... The trial court's instructions ... properly encompassed only purposeful murder and the lesser-included offenses of aggravated manslaughter, reckless manslaughter and passion/provocation manslaughter"); State v. Pitts, 116 N.J. 580, 604-607, 562 A.2d 1320 (1989). Further, because we reverse the conviction in the absence of a requested charge on passion/provocation manslaughter, and because the issue of a charge on imperfect self-defense might well again arise, we add that instructions on imperfect self-defense, to the extent authorized in State v. Bowens, should not be given with respect to the crimes of aggravated manslaughter or reckless manslaughter.

III.
As noted, the trial judge charged the jury on murder, aggravated manslaughter, reckless manslaughter, and self-defense. He did not charge the jury on passion/provocation manslaughter, *249 although such a charge was requested. Passion/provocation manslaughter is "[a] homicide which would otherwise be murder ... [that] is committed in the heat of passion resulting from a reasonable provocation." N.J.S.A. 2C:11-4b(2). "Passion/provocation manslaughter has four elements: the provocation must be adequate; the defendant must not have had time to cool off between the provocation and the slaying; the provocation must have actually impassioned the defendant; and the defendant must not have actually cooled off before the slaying." State v. Mauricio, 117 N.J. 402, 411, 568 A.2d 879 (1990). "If a slaying does not include all of those elements, the offense of passion/provocation manslaughter cannot be demonstrated." Id. As pointed out in State v. Crisantos (Arriagas), 102 N.J. 265, 508 A.2d 167 (1986):
Another common-law rule was that mutual combat under certain circumstances could constitute adequate provocation to reduce murder to manslaughter ... However, `to reduce the offense from murder to manslaughter the contest must have been waged on equal terms and no unfair advantage taken of the deceased. * * The offense is not manslaughter but murder where the defendant alone was armed; and took an unfair advantage of the deceased.' 1 Warren on Homicide, supra, § 110 at 525-526. Another authority expresses the same rule in these terms: `But if a person, under color of fighting on equal terms, kills the other with a deadly weapon which he used from the beginning or concealed on his person from the beginning, the homicide constitutes murder'. 2 Wharton's Criminal Law, supra, § 110 at 254 [102 N.J. at 274-275, 508 A.2d 167 (footnote omitted)].
However, as the Court in Crisantos (Arriagas) also noted, "[b]ecause the issue of passion/provocation can arise in an infinite number of factual settings, mitigation of homicide because of passion/provocation is ordinarily a question for the jury, unless the evidence is so weak as to preclude jury consideration." Id. at 275, 508 A.2d 167. In this regard, the Court further explained that "the rational-basis test of the Code [under N.J.S.A. 2C:1-8e] imposes a low threshold" such that "[w]hen the lesser-included offense charge is requested by a defendant ... the trial court is obligated, in view of defendant's interest, to examine the record thoroughly to determine if the rational-basis standard has been satisfied" 102 N.J. at 278, 508 *250 A.2d 167. See also State v. Choice, 98 N.J. 295, 298-299, 486 A.2d 833 (1985); State v. Powell, 84 N.J. 305, 318-319, 419 A.2d 406 (1980). Further, as stated in State v. Mauricio, "[t]he point to be made is that when a defendant requests a charge on passion/provocation manslaughter as a lesser-included offense of murder, the trial court should instruct the jury on that form of manslaughter if an examination of the record discloses that the evidence satisfies the rational-basis standard...", Mauricio, supra, 117 N.J. at 417-418, 568 A.2d 879. Stated differently:
"When the record contains evidence of passion/provocation, the State can obtain a murder conviction only if it proves beyond a reasonable doubt that the purposeful killing was not the product of passion/provocation. State v. Powell, 84 N.J. 305, 314, 419 A.2d 406 (1980). If there is sufficient evidence of passion/provocation, a trial court must instruct the jury that `to find murder it must be convinced beyond a reasonable doubt that the accused did not kill in the heat of passion * * *.' State v. Grunow, ... 102 N.J. [133] at 145, 506 A.2d 708 [(1986)]." [State v. Coyle, supra, 119 N.J. at 221-222, 574 A.2d 951. (emphasis added).]
In light of defendant's passion/provocation request, as in Mauricio, "the trial court's failure to have delivered the requested charge amounted to reversible error." Id. 117 N.J. at 418, 568 A.2d 879 (emphasis added). Considering the record most favorably towards defendant, including the possibility that he observed Martin's gun, the decedent's aggression and defendant's perception of the victim's reputation for violence, a jury question as to passion/provocation was presented. Further, particularly given defendant's acquittal of possession of a weapon for an unlawful purpose and the ongoing argument, we cannot conclude that his initially concealed possession of the handgun prior to the shooting prevents application of the doctrine in light of the ongoing argument. See State v. Crisantos (Arriagas), supra, 102 N.J. at 280, 508 A.2d 167, where defense was inapplicable because it was inconsistent with the position of both parties and the record; State v. Grunow, supra, 102 N.J. at 135, 506 A.2d 708, where the principle was applicable in light of a "violent emotional confrontation during which" the decedent attacked defendant.
*251 We recognize that defendant has been acquitted of murder and that passion/provocation manslaughter involves the same purposeful or knowing culpability requirement, as it involves what otherwise would be murder but for its being "committed in the heat of passion resulting from a reasonable provocation" N.J.S.A. 2C:11-4b(2). We also recognize that defendant must be retried for aggravated manslaughter and lesser offenses but cannot be retried for murder. Nevertheless, the issue of passion/provocation manslaughter may be presented to the jury at defendant's retrial. In State v. Grunow, supra, the trial court, while charging passion/provocation manslaughter at defendant's capital murder trial, improperly placed the burden of proving reasonable provocation on defendant. In holding that passion/provocation manslaughter could be presented at a retrial, despite the initial conviction for aggravated manslaughter, the Supreme Court said:
We recognize that our holding on the availability of passion/provocation to mitigate aggravated manslaughter will raise practical problems in presenting the issues to the jury on the retrial since the defendant cannot be retried for murder. We believe, however, that if the evidence presented at the retrial warrants, the court can clarify that passion/provocation manslaughter may be an available verdict if the jury finds from the evidence that the State has proven the elements of that offense beyond a reasonable doubt. [102 N.J. at 149, 506 A.2d 708].
Reversed and remanded for further proceedings consistent with this opinion.[4]
NOTES
[1] Barry Vonce later explained that the subject of the argument related to drugs.
[2] The Court also suggested that the same may be true with respect to passion/provocation manslaughter "[i]n some circumstances." Id. at 641, 532 A.2d 215.
[3] Given N.J.S.A. 2C:2-2b(3) defining "recklessly" and the elements of aggravated manslaughter and reckless manslaughter, both requiring that the defendant act "recklessly," see N.J.S.A. 2C:11-4a, b, we can understand why an honest, but unreasonable, belief in the need for the use of force could affect culpability and why the jury should be so advised. However, we decline to read Bowens to state more than it holds, particularly because the Court upheld Rivers' aggravated manslaughter conviction which perhaps could have been affected by such a charge.
[4] We leave for development at trial whether a Bowens charge would be warranted on passion/provocation manslaughter in the context that the greatest offense involves only reckless culpability.