920 A.2d 101 (2007)
392 N.J. Super. 101
STATE of New Jersey, Plaintiff-Respondent,
v.
Wilberto RODRIGUEZ, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 26, 2007.
Decided March 29, 2007.
*102 Michael B. Jones, Assistant Deputy Public Defender, argued the cause for appellant (Yvonne Smith Segars, Public Defender, attorney; Mr. Jones, of counsel and on the brief).
Lisa DeMartini, Assistant Prosecutor, argued the cause for respondent (Edward J. De Fazio, Hudson County Prosecutor, attorney; Leo Hernandez, Assistant Prosecutor, on the brief).
Before Judges S.L. REISNER, SELTZER and KING.
The opinion of the court was delivered by
S.L. REISNER, J.A.D.
Defendant, Wilberto Rodriguez, appeals from his conviction for reckless manslaughter, N.J.S.A. 2C:11-4b(1), possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4d, and unlawful possession of a weapon, N.J.S.A. 2C:39-5d, as well as from the fifteen-year sentence imposed.
Because the trial court erroneously instructed the jury that they should not consider self-defense with respect to manslaughter and failed to charge the jury on the issue of defendant's honest but mistaken belief in the need to act in self-defense as it related to the weapons offenses, we reverse the convictions and remand for re-trial.

I
Self-defense was the central issue at trial. There is no dispute that defendant was in the W.L. Mini-Market in Jersey City, attempting to sell two car radios to the store's employees and customers. Anthony Hobbs entered the store to buy pantyhose for his girlfriend. Defendant asked Hobbs if he wanted to buy the radios. Hobbs told defendant that he was not interested in buying the radios but if he wanted them, he would beat up defendant and take them. According to at least one eyewitness, Hobbs then threatened to "kick [defendant's] ass" and told defendant to come outside. Hobbs left and defendant remained in the store.
A few minutes later, Hobbs came back in the store and asked an employee, Pedro Castro, if Castro knew defendant. Hobbs then immediately began an unprovoked attack on defendant. Castro testified that Hobbs punched defendant in the head. Another witness testified that Hobbs forcefully grabbed defendant by the shoulder and tried to drag him out of the store. Defendant responded by stabbing Hobbs *103 with a folding knife. The knife was described as "small" and as about six inches long in total. It was never recovered.[1] All of the witnesses agreed that Hobbs, who was twenty-three years old, was the aggressor and that he was considerably taller than defendant, who was a small man in his late thirties.
Hobbs ran in a circle around to the back of the store and then toward the front of the store where he ran out the door. He ran a block to the home he shared with his girlfriend, where he collapsed. He died shortly thereafter in the hospital. According to the State's medical expert, decedent suffered a stab wound two to four inches deep which severed the right coronary artery and punctured the heart. Death was caused by an accumulation of blood within the sac surrounding the heart, which eventually caused the heart to stop beating. The expert opined that a person with that type of wound would not die immediately and would still be able to run as Hobbs did.
Defendant remained in the store until a regular customer drove him away from the scene at the request of the store manager, who was concerned that Hobbs would return to continue his attack on defendant. No one who witnessed the attack believed that Hobbs was seriously injured.
Although defendant did not testify, the State introduced his tape recorded confession, in which he described Hobbs' threat to wait outside the store for him, take the radios from him and beat him up. Defendant "[t]old [Hobbs] leave me alone. I don't want no problems." He stayed in the store when Hobbs left, but Hobbs came back into the store and attacked him. Defendant insisted that he had acted in self-defense as Hobbs, who towered over him, was attempting to beat and rob him. Defendant stated that he "hit" Hobbs with the knife but did not realize he had "stuck" Hobbs. The transcript of his confession indicates that defendant was crying as he insisted that he "didn't mean to do this."
Officer D'Angelo, who took defendant's statement, confirmed that defendant was emotional but "quite straightforward" in his demeanor. He was asked on cross-examination: "Did it sound or seem to you as though [defendant's] answers were contrived or purposefully designed to mislead?" D'Angelo answered "[n]o."
The only witness who addressed the issue of defendant's possible avenue of escape from Hobbs testified that there was only one way out of the store, through the front door. He indicated that there was an emergency exit at the back, but that it only worked in emergencies. It was not clear from his testimony whether it was locked. There was no testimony that defendant knew about the emergency exit, *104 although there was testimony that defendant had been in the store on five or six occasions.

II
Defendant raises the following issues on appeal:
POINT I: THE JUDGE'S CHARGE ON SELF-DEFENSE AS TO THE KILLING WAS CONFUSING AND INACCURATE AND DENIED THE DEFENDANT'S RIGHT TO A FAIR TRIAL. (Partially Raised Below).
A. The Judge's Charge Failed To Relate Self-Defense To The Lesser Included Offenses And Repeatedly Asserted That Self-Defense Had No Bearing On The Crimes Other Than Murder.
B. The Judge Improperly Included Matters In The Charge For Which There Was No Evidential Support.
C. This Court Should Hold That, As A Matter Of Law, When A Person Reasonably Believes That He Or She Is Threatened With Sexual Assault Or Robbery, That The Fear Of Serious Bodily Injury Is Established And There Is No duty To Consider Retreat Before Employing Deadly Force.
POINT II: THE JUDGE ERRED BY ALLOWING THE PROSECUTOR TO INTRODUCE A MUG SHOT OF THE DEFENDANT BECAUSE IDENTIFICATION WAS NOT AN ISSUE IN THE CASE. (Not Raised Below).
POINT III: THE JUDGE'S CHARGE ON UNLAWFUL POSSESSION OF A WEAPON AND POSSESSION OF A WEAPON FOR UNLAWFUL PURPOSES WERE IMPROPER UNDER STATE V. WILLIAMS, AND DEFENDANT'S CONVICTIONS ON COUNT TWO AND THREE MUST BE REVERSED AND REMANDED. (Not Raised Below).
POINT IV: THE IMPOSITION OF A LENGTHY EXTENDED TERM UNDER THESE CIRCUMSTANCES WAS MANIFESTLY EXCESSIVE.
A. The Court Ignored The Standards Established In State v. Dunbar And Imposed The Extended Term Sentence Without Properly Following The Dictates Of Dunbar.

B. The Defendant's Sixth Amendment Right To Have A Jury Determine All Of The Elements Of The Crime Was Violated When He Was Sentenced To An Extended Term Based Upon The Trial Court's Implicit Fact Finding That There Was A Need To Protect The Public. (Not Raised Below).
We address the self-defense issue first. We consider defendant's appellate objections to the jury charge under the plain error standard, because defense counsel did not object to the charge at trial. R. 1:7-2; R. 2:10-2. Nonetheless, we also bear in mind that accurate jury instructions are essential to a defendant's right to a fair trial. State v. Grunow, 102 N.J. 133, 148-49, 506 A.2d 708 (1986). In this case we are persuaded that errors in the jury charge deprived defendant of a fair trial and may have caused the jury to find him guilty when they might have acquitted him if properly charged. See State v. Macon, 57 N.J. 325, 336, 273 A.2d 1 (1971).
In order to understand our conclusion that the jury charge constituted prejudicial error, it is necessary to review what the judge told the jury about the offenses of murder and manslaughter and how self-defense applied or did not apply to those charges. At the beginning of his instructions, the judge explained to the jury that murder required the State to prove that *105 defendant purposely caused "death or serious bodily injury resulting in death, or knowingly caus[ed] death or serious bodily injury resulting in death." He also told them that, as to the murder charge, the State had the burden to prove defendant did not act in self-defense.
So when I instruct you in self-defense, we call it justification, you may consider that when you consider the murder charge. Because [murder's] got to be a purposeful state of mind or a knowing state of mind. If the State hasn't proved a purpose, they can't prove murder. If they haven't proved a knowing state of mind, they can't prove murder. If they haven't proven that he didn't act in self-defense, then he's found not guilty.
The judge then instructed the jury concerning manslaughter, telling them that "as to self-defense, one can only act in self-defense as to a purposeful or knowing state of mind in causing death or serious bodily injury resulting in death." Therefore, he charged them that "self-defense is not an element that the State must prove beyond a reasonable doubt in the reckless [manslaughter] charge, it's only an element in the purposeful or knowing murder charge."
The verdict sheet did not specifically ask the jury to determine whether defendant acted in self-defense. Question one asked the jury to decide if defendant was: "(a) NOT GUILTY of MURDER or PASSION/PROVOCATION MANSLAUGHTER (b) GUILTY of PASSION/PROVOCATION MANSLAUGHTER or (c) GUILTY of MURDER and NOT acting in SELF DEFENSE." The remaining questions concerning aggravated manslaughter, reckless manslaughter and weapons charges did not mention self-defense. The jury checked question 1(a), finding defendant not guilty of murder or passion/provocation manslaughter. They found him not guilty of aggravated manslaughter, but guilty of reckless manslaughter.
The jury charge, together with the verdict sheet, created the possibility that the jury might have found defendant not guilty of murder without ever considering his claim of self-defense. They might have acquitted him of murder because they believed defendant's statement to the police that he "didn't mean" to cause Hobbs death or serious bodily injury. The charge then required them to deliberate on the aggravated and reckless manslaughter charges without considering self-defense, because the judge told them repeatedly that self-defense did not apply to those charges.
During deliberations, the jury asked a series of questions from which we infer that they were focused on the issue of self-defense and its relationship to the manslaughter charges. On December 8, 2004, they sent out several questions including the following: "Can self-defense nullify passion/provocation manslaughter, can self-defense nullify all charges?" The judge construed the question as directed only at passion/provocation manslaughter and, accordingly, re-read the charge on self-defense and explained that lack of self-defense was an element of murder but not of passion/provocation manslaughter. In re-charging the jury, however, he again reminded them "[n]ow, remember, only in this murder charge will you hear the element of self-defense, not in passion/provocation or the reckless charges." He also stated that "[s]elf-defense is only an element as to purposeful knowing murder that I've just defined."
In answering the question as to whether self-defense could nullify all charges, the judge answered:
Yes. If there's a finding that the person acts in self-defense as to that original *106 murder charge, then he's not guilty of all charges, because he acted in self-defense. However, if, for example, you're deliberating reckless manslaughter, self-defense is not an element that they have to prove. So if you find . . . that he did act in self-defense, he's not guilty, because he acted in self-defense justification as to murder. Therefore you need not render a verdict as to any other charge except for the weapons charges.
. . . [L]ikewise, if you find that he's guilty of murder, and did not act in self-defense, then you find he's guilty of murder. If you find that he did not act in self-defense, or did not purposely or knowingly act, then he's not guilty [of murder].
[(Emphasis added).]
Reasonable jurors could easily have understood the above language as a direction that self-defense only applied to murder, and that if they found defendant not guilty of murder on grounds other than self-defense, they were not then to consider self-defense with respect to any of the other homicide charges.
The jurors' evident confusion appeared in their question on the next day, when they asked for "a written statement of the law that applies to this case. If not, may we take notes during explanation." When the judge asked the jury for a more specific question, they asked again to be charged on self-defense. This time, the judge charged them that
self-defense is an element of purposeful or knowing murder that the State must prove that the defendant didn't act in self-defense, as opposed to passion/provocation manslaughter or murder.
. . . If one is found to be acting in self-defense, meaning the State did not prove that they didn't act in self-defense, that is a complete exoneration, there's a finding of not guilty, rather, as to that charge, and then as to all charges relative to any homicide charges that you're considering. . . .

So the State has to prove the defendant guilty beyond a reasonable doubt of murder, and prove that the defendant didn't act in self-defense. . . . Because if the State doesn't prove that the defendant did not act in self-defense you need not deliberate as to any other charge.
[(Emphasis added).]
While this charge came close to being correct, the judge did not tell the jury what to do with the self-defense issue if they concluded that the State did not otherwise prove defendant guilty of murder.
The jury then asked to be charged on the difference between reckless manslaughter and aggravated manslaughter. In response, the judge again told them that they could not consider self-defense with respect to those charges.
Now, when we deal with recklessness, we are not dealing with the murder charges of purposeful or knowing . . . or self-defense. . . .
After this instruction, defense counsel pointed out that the verdict sheet did not directly give the jury the opportunity to make a finding as to self-defense. The judge refused to modify the verdict sheet to address that issue.
On the following day of deliberations, the jury asked for, and received, a recharge on the weapons offenses. They were instructed that, as to both charges, the State had to prove that defendant was not acting in self-defense.
The Legislature has defined self-defense as follows:
Subject to the provisions of this section and of section 2C:3-9, the use of force upon or toward another person is justifiable *107 when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.
[N.J.S.A. 2C:3-4a.]
However, "[t]he use of deadly force is not justifiable . . . unless the actor reasonably believes that such force is necessary to protect himself against death or serious bodily harm." N.J.S.A. 2C:3-4b(2). "[N]or is it justifiable if . . . [t]he actor knows that he can avoid the necessity of using such force with complete safety by retreating[.]" N.J.S.A. 2C:3-4b(2)(b).
In State v. Kelly, 97 N.J. 178, 478 A.2d 364 (1984), the Supreme Court recognized the applicability of self-defense to a charge of reckless manslaughter. Id. at 202-04, 478 A.2d 364. The Court also specifically rejected the State's argument that "self-defense was not available as a defense" to reckless manslaughter. Id. at 203 n. 12, 478 A.2d 364. In State v. Ciuffreda, 127 N.J. 73, 81-82, 602 A.2d 267 (1992), the Supreme Court likewise inferentially recognized that self-defense applied to manslaughter ("Here, defendant had notice before his trial began that he might be charged with passion/provocation manslaughter. His self-defense posture applied as much to that charge as it did to aggravated manslaughter and reckless manslaughter." Ibid.). The Model Jury Charge (Criminal), § 2C:3-4 does not indicate that self-defense may only be charged in connection with murder; to the contrary it gives as an example that defendant is charged with "homicide."
The State's position, that self-defense cannot negate reckless manslaughter, is based on a misreading of cases addressing imperfect self-defense. In State v. Bowens, 108 N.J. 622, 532 A.2d 215 (1987), the Supreme Court addressed the issue of imperfect self-defense, i.e., a situation in which a defendant commits a homicide due to "his honest, if not reasonable, belief in the necessity to use force." Id. at 636, 532 A.2d 215. See N.J.S.A. 2C:3-9a. In Bowens, the Court held that imperfect self-defense is not a justification defense, as to which a jury must be charged in the way a jury must be charged as to self-defense. Bowens, supra, 108 N.J. at 626, 532 A.2d 215. See State v. Coyle, 119 N.J. 194, 228, 574 A.2d 951 (1990). Rather, evidence of such a mistaken but honest belief may bear "upon the question whether the State had proven that [defendant] acted purposely or knowingly" with "the conscious object or design to kill." Bowens, supra, 108 N.J. at 636-37, 532 A.2d 215. Thus, a defendant's evidence of imperfect self-defense, if believed, may result in a verdict of manslaughter rather than murder, because such evidence could permit the jury to conclude that defendant acted recklessly rather than knowingly or purposely. That is a totally different issue, however, from whether "complete" self-defense can exonerate a defendant of all homicide charges. Clearly it can, and Bowens did not hold that a jury should not be charged as to self-defense in connection with a charge of manslaughter.
In State v. Pridgen, 245 N.J.Super. 239, 584 A.2d 869 (App.Div.), certif. denied, 126 N.J. 327, 598 A.2d 886 (1991), we held that "instructions on imperfect self-defense, to the extent authorized in State v. Bowens, should not be given with respect to the crimes of aggravated manslaughter or reckless manslaughter." Id. at 248, 584 A.2d 869 (emphasis added). That is so because imperfect self-defense conduct is unreasonable conduct, which equates with recklessness, and therefore is not a defense to manslaughter. Pridgen does not stand for the proposition that self-defense is not a defense to manslaughter. In fact, in Pridgen, we noted that "the trial judge *108 charged the jury on murder, aggravated manslaughter, reckless manslaughter, and self-defense." Ibid.
In State v. Colon, 298 N.J.Super. 569, 689 A.2d 1359 (App.Div.), certif. denied, 150 N.J. 27, 695 A.2d 670 (1997), we considered, under the plain error standard, the propriety of a charge that "the defense of others charge did not apply to the recklessness counts." Id. at 576, 689 A.2d 1359. We noted that prior cases, including Kelly, supra, had mentioned "charging self-defense as to reckless counts" but had provided little analysis on the issue. Id. at 577, 689 A.2d 1359. We concluded that "the [self-defense] charge should have been given" with respect to reckless manslaughter, but we also concluded that the failure to give the charge was harmless error. Id. at 578-79, 689 A.2d 1359.
In its brief, the State contends that
[w]hen seeking conviction for reckless manslaughter, the [S]tate is not required to prove a knowing and purposeful mindset, but only that the acts were not justified. The [S]tate is therefore not required to disprove self-defense justification, as it would if such justification were raised as an affirmative defense to a purposeful and knowing crime.

The State's approach, however, begins by assuming the conclusion that defendant committed reckless manslaughter, a crime requiring the State to prove defendant's "gross deviation" from reasonable conduct in the situation. N.J.S.A. 2C:2-2b(3). The State then asks, reasoning backward, whether self-defense (which requires a reasonable intent to defend, not reckless conduct) could excuse defendant. This approach is logically erroneous. Under the Criminal Code, "[c]onduct which would otherwise be an offense is excused or alleviated by reason of any defense . . . provided by law." N.J.S.A. 2C:2-5. The same conduct on which a jury could base a finding of reckless manslaughter could also support a finding of self-defense, depending on whether defendant acted on a reasonable belief in the necessity for the force employed. This case is a perfect example.
It is readily inferable from defendant's statement to the police that he "hit" Hobbs with the knife, not intending to kill or seriously injure him but only intending to make Hobbs leave him alone. Absent the justification of self-defense, defendant's statement was a confession to manslaughter, because he acted recklessly but with no intent to kill or seriously injure Hobbs. On the other hand, if the jury believed that defendant acted to save himself from an imminent threat from Hobbs of death or serious injury, and that defendant could not retreat in complete safety, defendant's conduct constituted self-defense and he should have been acquitted. Defendant was therefore entitled to a self-defense charge as to manslaughter as well as murder, and the trial court's repeated instruction to the jury that self-defense did not apply to manslaughter was prejudicial error.
State v. Moore, 158 N.J. 292, 729 A.2d 1021 (1999), which the State cites, does not require a different result here. The issue in Moore was "whether the jury should have been instructed on non-deadly force self-defense or deadly force self-defense" to a charge of second-degree aggravated assault. Id. at 296, 729 A.2d 1021. In Moore, the defendant unjustifiably brandished a loaded gun at a group of people who were approaching him. Id. at 297, 729 A.2d 1021. A fight broke out, during which the victim grabbed the gun and the defendant shot him. Id. at 297-98, 729 A.2d 1021. The defendant's primary claim at trial was that the shooting was an accident. Id. at 298, 729 A.2d 1021. However, he contended that the trial judge should also have charged the jury as to *109 self-defense, not based on the defendant's reasons for brandishing the gun but based on the subsequent struggle over the weapon. Ibid.
The Court held that once a defendant recklessly brandishes a gun, he cannot claim justification under "the threat provision of N.J.S.A. 2C:3-11b" after the gun discharges.[2]Id. at 303, 729 A.2d 1021. Further, he cannot claim self-defense "under the recklessly causing serious bodily injury alternative theory of second-degree aggravated assault." Ibid. Taken in context, the Court's statement in the same paragraph, that "[t]he Code's justification defenses are not available in a prosecution where recklessness or negligence suffices to establish the requisite mental element," is dicta. Ibid. The Court's holding is consistent with our conclusion here, because the Court in Moore was addressing a defendant's conduct that by definition was reckless. By contrast, the issue for the jury in this case is whether defendant's conduct was reckless or whether it was self-defense. Moreover, the result in Moore was heavily influenced by the fact that defendant was using a firearm, id. at 306-7, 729 A.2d 1021, and unlike this case, "no rational basis existed requiring a self-defense charge." Id. at 310, 729 A.2d 1021.
Although we agree that there were prejudicial errors in the jury instructions, we do not agree with defendant's further contentions that the trial judge erred in instructing the jury as to defendant's duty to retreat if he could do so with complete safety. N.J.S.A. 2C:3-4b(2)(b). While the State's case on this issue was marginal, it was sufficient to create a jury issue. After the stabbing, Hobbs retreated from defendant by running around the various aisles and counters in the store and then running out the front door. The jury might have concluded that defendant could have done the same thing.
We find no merit in defendant's contention that he had no duty to retreat in the face of a threatened robbery. The Model Jury Charge on self-defense includes, where appropriate, an explanation that sexual assault is a form of serious bodily injury, the threat of which would justify the use of deadly force in self-defense. Model Jury Charge (Criminal), § 2C:3-4. Unlike sexual assault, robbery itself is not a form of physical injury, and not every robbery presents an immediate threat of serious bodily injury or death. See N.J.S.A. 2C:15-1b. Although Hobbs may have been trying to rob defendant, the issue for purposes of self-defense is whether Hobbs' actions presented defendant with an immediate threat of serious bodily injury or death.
Finally, we agree with defendant that the jury charge concerning the weapons offenses was fatally flawed, because it omitted the following portion of the Model Charge:
if defendant honestly believed that (he/she) needed to use a (name weapon) to protect [himself], the law does not require that this belief be reasonable. In other words, if defendant had an honest though unreasonable belief that he/she needed to use the weapon to protect [himself], this negates the purposeful mental state required for the offense.
[Model Jury Charge (Criminal), § 2C:39-4d.]
We consider this issue under the plain error standard, since it was not raised below. R. 2:10-2.
*110 In State v. Williams, 168 N.J. 323, 774 A.2d 457 (2001), the Court held that a defendant charged with possession of a weapon for an unlawful purpose "may not be deprived of the opportunity to assert a mistaken belief that could negate the mental state required to convict." Id. at 333, 774 A.2d 457. Therefore, defendant Williams, charged with possession of a weapon for an unlawful purpose, was entitled to present in defense proof that he possessed the weapon for the purpose of defending his wife, even if he was mistaken about the need to use the weapon to defend her. Id. at 334, 774 A.2d 457. The Court found that the failure to instruct the jury on this issue was prejudicial error, noting the particular "potential for confusion" when a defendant claims self-defense as a "justification defense" to aggravated assault, but also claims that he possessed a weapon for purposes of self-defense. Id. at 338-39, 774 A.2d 457. The jury may "improperly import[ ] the reasonableness requirement from the justification defense to the determination of whether [defendant] had the requisite state of mind to be convicted under N.J.S.A. 2C:39-4a [unlawful weapons possession.]" Id. at 338, 774 A.2d 457. "By failing to explain that a reasonable belief in the need to defend another is required for justification, but that only an honest, though unreasonable, belief is sufficient to negate a purposeful mental state, the judge left the jury to speculate about the applicable law." Id. at 339, 774 A.2d 457.
We conclude that the absence of the appropriate charge was prejudicial error with respect to the convictions on both weapons charges. As the trial judge properly charged the jury, self-defense would negate defendant's guilt on the charges of possession of the knife for an unlawful purpose, N.J.S.A. 2C:39-4d, and unlawful possession of the knife, N.J.S.A. 2C:39-5d. The latter charge required the State to prove that defendant knowingly possessed the knife "under circumstances not manifestly appropriate for such lawful uses as it may have." Ibid. The weapon in question was a folding knife which might be entirely appropriate to possess, and therefore defendant's guilt turned on why he possessed the knife. As the Model Charge indicates:
You may consider factors such as the surrounding circumstances; . . . the time, place and actions of the defendant when it was found in his/her possession to determine whether or not the object was manifestly appropriate for its lawful use.
[Model Jury Charge (Criminal), § 2C:39-5d; N.J.S.A. 2C:39-5d.]
If defendant possessed the knife for purposes of self-defense and was attempting to defend himself at the time he used the knife, albeit in an honest but unreasonable belief that he needed to use deadly force, he should have been acquitted of unlawful weapons possession and possession for an unlawful purpose. Moreover, since we are also reversing the reckless manslaughter conviction, the fact that the weapons convictions merged with the manslaughter conviction for sentencing purposes does not render the error harmless. Cf. State v. Johnson, 287 N.J.Super. 247, 263, 670 A.2d 1100 (App.Div.), certif. denied, 144 N.J. 587, 677 A.2d 759 (1996).
Reversed and remanded.
NOTES
[1] At trial the prosecutor elicited certain evidence that was irrelevant or unnecessary. She presented testimony from a police witness concerning a large kitchen knife that police found eight blocks from the store, encrusted with old debris. She also had the officer show the knife to the jury. After the prosecutor conceded that this could not possibly have been the weapon defendant used, the judge strongly instructed the jury to disregard the evidence.

The prosecutor also had a police witness testify concerning a photograph of defendant, redacted to cover up information identifying it as a mug shot, that one of the eyewitnesses identified during the investigation. The photo was later introduced into evidence, without defense objection, although there was no issue as to defendant's identity or as to his presence at the scene of the stabbing. The judge properly charged the jury that the photo was not evidence that defendant had ever been arrested or convicted of a crime and that it could have been from a driver's license or other application. Defendant's appellate arguments concerning the photograph do not merit further discussion in a written opinion. R. 2:11-3(e)(2).
[2] "A threat to cause death or serious bodily harm, by the production of a weapon or otherwise, so long as the actor's purpose is limited to creating an apprehension that he will use deadly force if necessary, does not constitute deadly force." N.J.S.A. 2C:3-11b.