949 A.2d 197

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT AND CROSS–RESPONDENT, v. WILBERTO RODRIGUEZ, DEFENDANT–RESPONDENT AND CROSS–APPELLANT.

Argued March 26, 2008—Decided June 9, 2008.

166

*Lisa M. De Martini,* Assistant Prosecutor, argued the cause for appellant and cross-respondent (*Edward J. De Fazio,* Hudson County Prosecutor, attorney).

*Michael B. Jones,* Assistant Deputy Public Defender, argued the cause for respondent and cross-appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Steven A. Yomtov,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*Anne Milgram,* Attorney General, attorney).

Justice ALBIN delivered the opinion of the Court.

The central issue in this appeal is whether a person who has an honest and reasonable belief that the use of deadly force is necessary to repel an assailant from inflicting on him death or serious bodily harm can be criminally liable for the reckless manslaughter of that assailant. Essentially, we must decide whether a valid self-defense claim and a reckless manslaughter conviction of an aggressor are mutually exclusive under the New Jersey Code of Criminal Justice.

Defendant Wilberto Rodriguez was indicted for the first-degree purposeful or knowing murder of Anthony Hobbs, *N.J.S.A.* 2C:11–3(a)(1) or –3(a)(2); third-degree possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4(d); and fourth-degree unlawful possession of a weapon, *N.J.S.A.* 2C:39–5(d). A jury found Rodriguez not guilty of murder and the lesser-included offenses of first-degree aggravated manslaughter, *N.J.S.A.* 2C:11–4(a)(1), and second-degree provocation manslaughter, *N.J.S.A.* 2C:11–4(b)(2), but guilty of the lesser-included offense of second-degree reckless manslaughter, *N.J.S.A.* 2C:11–4(b)(1), and the weapons offenses. The trial court sentenced defendant to fifteen years imprisonment with an eighty-five percent period of parole ineligibility on the manslaughter conviction and merged the weapons convictions into the manslaughter conviction. The court also imposed a five-year

period of parole supervision and the applicable statutory fines and penalties.[1]

The Appellate Division reversed the manslaughter conviction because the trial court did not give a proper jury charge on self-defense. *State v. Rodriguez,* 392 *N.J.Super.* 101, 920 *A.*2d 101 (App.Div.2007). In particular, the trial court did not make clear that if the State failed to disprove that Rodriguez acted in self-defense in using deadly force to ward off Hobbs's alleged attack and attempted robbery, Rodriguez could not be found guilty of reckless manslaughter. *Id.* at 110–14, 920 *A.*2d 101. The Appellate Division also found that the jury instructions on the weapons offenses were "fatally flawed" because the court omitted a critical portion of the model jury charge. *Id.* at 115–16, 920 *A.*2d 101.

We granted the State's petition for certification to determine whether a valid claim of self-defense—when not disproved by the State—exonerates a defendant of reckless manslaughter. 192 *N.J.* 292, 927 *A.*2d 1291 (2007). We also granted defendant Rodriguez's cross-petition to determine whether the Appellate Division properly rejected his contention that, as a matter of law, "he was under no duty to retreat in the face of a threatened robbery." *Ibid.* Although we now affirm the judgment of the Appellate Division, substantially for the reasons expressed in Judge Reisner's well-reasoned opinion, we write to dispel any confusion concerning the scope of self-defense as a legal justification when the charged offense alleges reckless conduct.

## I.

We focus solely on those facts that are relevant to resolve the

---

[1] When a court imposes "a minimum period of parole ineligibility of 85 percent of the sentence" under *N.J.S.A.* 2C:43–7.2, as it did in this case, the court "shall also impose a five-year term of parole supervision if the defendant is being sentenced for a crime of the first degree, or a three-year term of parole supervision if the defendant is being sentenced for a crime of the second degree." *N.J.S.A.* 2C:43–7.2(c). The court mistakenly imposed a five-year period of parole supervision, instead of a three-year term, on the second-degree manslaughter conviction.

issues before us.[2] Because Rodriguez interposed self-defense as a justification for his conduct, we look only to the evidence that provides a rational basis for a self-defense charge. *See State v. Kelly*, 97 *N.J.* 178, 200, 478 *A.2d* 364 (1984) (noting that "if any evidence raising the issue of self-defense is adduced, either in the State's or the defendant's case, then the jury must be instructed" on that defense); *see also State v. Galloway*, 133 *N.J.* 631, 648, 628 *A.2d* 735 (1993) (suggesting that when deciding whether defendant is entitled to specific defense, evidence must be "viewed in the light most favorable to the defendant").

On the morning of March 19, 2003, Rodriguez was inside the W.L. Mini–Market in Jersey City, attempting to sell car radios to people in the store. Hobbs, who was in the store making a purchase for his girlfriend, spoke to Rodriguez about the price of the radios. Hobbs, apparently, had no desire to buy the radios and threatened to "kick [Rodriguez's] ass" and take the radios away from him. Hobbs told Rodriguez that he would wait for him outside, but Rodriguez remained in the store after Hobbs departed.

Within a few minutes, Hobbs returned. The Appellate Division succinctly described what happened next.

> Hobbs then immediately began an unprovoked attack on defendant. [A store employee] testified that Hobbs punched defendant in the head. Another witness testified that Hobbs forcefully grabbed defendant by the shoulder and tried to drag him out of the store. Defendant responded by stabbing Hobbs with a folding knife. The knife was described as "small" and as about six inches long in total. It was never recovered. All of the witnesses agreed that Hobbs, who was twenty-three years old, was the aggressor and that he was considerably taller than defendant, who was a small man in his late thirties.
>
> [*Rodriguez, supra*, 392 *N.J.Super.* at 104, 920 *A.2d* 101 (footnote omitted).]

Hobbs died shortly thereafter as a result of the stabbing.

## II.

The trial court's jury instructions on self-defense were, at best, confusing. On the one hand, the court advised the jury that the

---

[2] A more detailed factual account can be found in Judge Reisner's opinion. *Rodriguez, supra*, 392 *N.J.Super.* at 103–06, 920 *A.2d* 101.

State's failure to disprove self-defense beyond a reasonable doubt must result in defendant's "complete exoneration." On the other hand, the court explained that "self-defense is not an element that the State must prove beyond a reasonable doubt in the reckless charge, it's only an element in the purposeful or knowing murder charge," and "if, for example, you're deliberating reckless manslaughter, self-defense is not an element that [the State has] to prove." We agree with the appellate panel that "the trial court's repeated instruction to the jury that self-defense did not apply to manslaughter was prejudicial error." *Id.* at 113, 920 *A.*2d 101.

In the case before us, the State had the burden of proving beyond a reasonable doubt that Rodriguez did not act in self-defense in repelling Hobbs's attack. *See Kelly, supra,* 97 *N.J.* at 200, 478 *A.*2d 364. Statutory and case law support the Appellate Division's conclusion that the State's failure to meet that burden would entitle Rodriguez to an exoneration of criminal liability on the murder, aggravated manslaughter, and manslaughter charges.

## A.

The New Jersey Code of Criminal Justice, *N.J.S.A.* 2C:1–1 to 2C:104–9, defines the manner and circumstances in which a person may use force to protect himself from harm. *N.J.S.A.* 2C:3–4(a) generally provides that "the use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." The Code, however, places specific constraints on the use of deadly force in self-defense.

> The use of deadly force is not justifiable under this section unless the actor *reasonably believes* that such force is necessary to protect himself against death or serious bodily harm; nor is it justifiable if:
>
> (a) The actor, with the purpose of causing death or serious bodily harm, provoked the use of force against himself in the same encounter; or
>
> (b) The actor knows that he can avoid the necessity of using such force with complete safety by retreating or by surrendering possession of a thing to a person asserting a claim of right thereto or by complying with a demand that he abstain from any action which he has no duty to take....

[*N.J.S.A.* 2C:3–4(b)(2) (emphasis added).]

"Self-defense exonerates a person who kills in the reasonable belief that such action was necessary to prevent his or her death or serious injury, even though this belief was later proven mistaken." *Kelly, supra,* 97 *N.J.* at 198, 478 *A.*2d 364. Before resorting to deadly force, one must have both an objectively reasonable and an honest—that is, sincere—belief "in the need to kill in self-defense." *Id.* at 198–200, 478 *A.*2d 364.

Under the Code, exoneration on the basis of self-defense would be clearly inconsistent with a finding of manslaughter—that a person recklessly killed his aggressor. That is so because the key to a valid self-defense is that a defendant "reasonably believe" that the use of deadly force is necessary to avoid being killed or suffering serious bodily harm. The Code defines "reasonably believes" as "a belief the holding of which does not make the actor *reckless* or criminally negligent." *N.J.S.A.* 2C:1–14(j) (emphasis added). A person commits manslaughter when he "recklessly" "causes the death of another human being," *N.J.S.A.* 2C:11–2(a) and –4(b)(1), and aggravated manslaughter when he "recklessly causes death under circumstances manifesting extreme indifference to human life," *N.J.S.A.* 2C:11–4(a)(1). Based on the Code's own language, a person who kills in the honest and reasonable belief that the protection of his own life requires the use of deadly force does not kill recklessly.

Although a valid self-defense is inconsistent with an act of recklessness toward one's aggressor, it is another question if the use of force to protect one's self recklessly endangers innocent third parties. A person justified in using deadly force for his own protection is stripped of the legal justification of self-defense if "he recklessly or negligently injures or creates a risk of injury to innocent persons." *N.J.S.A.* 2C:3–9(c). Thus, by including both *N.J.S.A.* 2C:3–4(b)(2) and *N.J.S.A.* 2C:3–9(c) in the Code, the Legislature clearly indicated that acting on an honest and reasonable belief in the need to use deadly force against an aggressor is

not reckless, but that endangering third parties in the use of such force may be reckless.

The simple logic of our interpretative analysis is supported by our finding in *Kelly* that the Legislature's intent in enacting *N.J.S.A.* 2C:3–4 "was that self-defense based on a *reasonable* belief in the need for deadly force would constitute justification—a complete defense—to the charge of reckless manslaughter." *Kelly, supra,* 97 *N.J.* at 204 n. 12, 478 *A.*2d 364. In *Kelly,* we added that "[i]f the jury [in that case] found defendant's belief was both honest *and* reasonable, it would be required to acquit her of" reckless manslaughter. *Ibid.* We continue to adhere to our position in *Kelly.*

### B.

The confusion in the trial court's jury charge in this case may be attributable to dicta in *State v. Moore,* 158 *N.J.* 292, 729 *A.*2d 1021 (1999), which broadly stated that "[t]he Code's justification defenses are not available in a prosecution where recklessness or negligence suffices to establish the requisite mental element," *id.* at 303, 729 *A.*2d 1021, and that "[w]here recklessness or negligence is the requisite mental state to establish an offense ... self-defense is not a justification," *id.* at 301, 729 *A.*2d 1021. As we have shown, that is not a correct statement of law when applied to a person who uses deadly force to protect himself against death or serious bodily injury and does not endanger innocent third persons in doing so. *See N.J.S.A.* 2C:3–4(b)(2) and 2C:3–9(c).

In *Moore, supra,* the defendant pulled a gun on a group of five people who approached him on a street in East Orange. 158 *N.J.* at 296–97, 729 *A.*2d 1021. One person from that group grabbed for control of the gun and was shot in the stomach, causing serious internal injuries. *Id.* at 297, 729 *A.*2d 1021. The defendant pointed the gun at another person but did not pull the trigger. *Ibid.* The defendant was charged with second-degree aggravated assault, *N.J.S.A.* 2C:12–1(b)(1), and the State proceeded on a theory that the defendant either " 'purposely or knowingly' "

caused "serious bodily injury to" the victim, or " 'recklessly cause[d] [that] injury' " " 'under circumstances manifesting extreme indifference to the value of human life.' " *Moore, supra,* 158 *N.J.* at 300, 729 *A*.2d 1021 (first alteration in original) (quoting *N.J.S.A.* 2C:12–1(b)(1)). The defendant claimed that the gun accidentally discharged. *Id.* at 298, 729 *A*.2d 1021. The court refused the defendant's request for a self-defense charge, and a jury convicted defendant of aggravated assault. *Ibid.* The Appellate Division reversed, finding that the jury should have been charged on self-defense. *Id.* at 299, 729 *A*.2d 1021.

This Court disagreed and reinstated the defendant's aggravated assault conviction. *Id.* at 312, 729 *A*.2d 1021. The Court determined that the defendant was not entitled to a self-defense charge because he did not have an honest or reasonable belief in the need for using deadly force and because he was the aggressor. *Id.* at 311, 729 *A*.2d 1021. Thus, the Court's mistaken assertion in Moore—that self-defense is not a justification when the requisite mental state to establish an offense is recklessness—was not necessary to support its ultimate judgment.

## C.

In considering whether to charge the jury on self-defense, a court should consider the circumstances that might give rise to that defense, including the defendant's and alleged aggressor's conduct, rather than the charges chosen by the prosecutor. The reality of the situation facing the defendant governs whether he had a right to engage in self-defense. As long as a self-defense charge is requested and supported by some evidence in the record, it must be given. In this case, it is uncontested that Hobbs engaged in an unprovoked attack on Rodriguez, purportedly in an attempt to rob him of his radios. It was for the jury to determine whether defendant reasonably believed that the use of deadly force—stabbing Hobbs with a knife—was necessary to protect himself against death or serious bodily harm and whether defendant knew that he could have avoided the use of deadly force by

safely retreating. If the State failed to prove beyond a reasonable doubt that defendant could not have reasonably believed in the need to use deadly force, defendant should have been exonerated from criminal liability and acquitted of murder, aggravated manslaughter, and manslaughter. Conversely, if the State met its burden, then the jury should have considered the substantive charges.

 " '[C]lear and correct jury instructions are essential for a fair trial[.]' " *State v. Martini,* 187 *N.J.* 469, 477, 901 *A.*2d 941 (2006) (first alteration in original) (quoting *State v. Koskovich,* 168 *N.J.* 448, 507, 776 *A.*2d 144 (2001)), *cert. denied,* ⸺ U.S. ⸺, 127 *S.Ct.* 1285, 167 *L.Ed.*2d 104 (2007). Moreover, " '[e]rrors impacting directly upon ... sensitive areas of a criminal trial are poor candidates for rehabilitation' under the plain error theory." *State v. Jordan,* 147 *N.J.* 409, 422, 688 *A.*2d 97 (1997) (quoting *State v. Simon,* 79 *N.J.* 191, 206, 398 *A.*2d 861 (1979)). Because the erroneous jury instructions here were "clearly capable of producing an unjust result," defendant's conviction for reckless manslaughter cannot stand. *R.* 2:10–2.

## III.

Last, we agree with the Appellate Division's conclusion that defendant was not entitled to a jury instruction "that he had no duty to retreat in the face of a threatened robbery." *Rodriguez, supra,* 392 *N.J.Super.* at 114, 920 *A.*2d 101. The Code requires that if a person "knows that he can avoid the necessity of using [deadly] force with complete safety by retreating," he must do so or lose self-defense as a justification for his conduct. *N.J.S.A.* 2C:3–4(b)(2)(b). Defendant, in effect, asks this Court to countermand the Code and give a victim a license to kill a robber, even when the victim knows he can safely retreat without resort to deadly force. We will not assume that in all robberies a victim will reasonably believe he is likely to suffer death or serious bodily injury and cannot safely retreat. We will not sanction the gratu-

itous use of deadly force in violation of the express terms of the Code.

## IV.

For the reasons expressed, we affirm the judgment of the Appellate Division, which remanded this matter for a new trial on the reckless manslaughter and weapons charges.

*For affirmance*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO, and HOENS—6.