813 A.2d 560 (2003)
356 N.J. Super. 468
STATE of New Jersey, Plaintiff-Respondent,
v.
Michelle TIERNEY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 23, 2002.
Decided January 10, 2003.
*562 Robert L. Sloan, Assistant Deputy Public Defender, argued the cause for appellant (Yvonne Smith Segars, Public Defender, attorney; Mr. Sloan, of counsel and on the brief).
Steven A. Yomtov, Deputy Attorney General, argued the cause for respondent (Peter C. Harvey, Acting Attorney General, attorney; Mr. Yomtov, of counsel and on the brief).
Before Judges KING, LISA and FUENTES.
*561 The opinion of the court was delivered by LISA, J.A.D.
Tried to a jury, defendant was convicted of first-degree knowing or purposeful murder, N.J.S.A. 2C:11-3a(1), (2) (count one), and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4d (count two). The trial judge sentenced defendant for murder to thirty years imprisonment without eligibility for parole and for the weapons offense to a concurrent four-year term. Appropriate mandatory monetary penalties were also imposed. On appeal, defendant contends:
POINT I
THE JURY INSTRUCTIONS ON SELF-DEFENSE AND PASSION/ PROVOCATION MANSLAUGHTER FAILED TO PRVIDE FACTUAL CONTEXT FOR FAIR CONSIDERATION OF BATERED WOMAN'S SYNDROME, IN VIOLATION OF DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL. U.S. CONST. AMEND. XIV; N.J. CONST. (1947) ART. I, PARS. 1, 9, 10. (Not Raised Below).
POINT II
JURY INSTRUCTIONS THAT FAILED TO EXPLAIN HOW "IPERFECT SELF-DEFENSE" COULD RESULT IN A VERDICT OF AGGRAVATED MANSLAUGHTER, RECKLESS MANSLAUGHTER, OR PASSION/PROVOCATION MASLAUGHTER RATHER THAN MUDER DEPRIVED DEFENDANT OF THE RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL. U.S. CONST. AMEND. XIV; N.J. CONST. (1947) ART. I, PARS. 1, 9, 10. (Not Raised Below).
POINT III
THE CONVICTION FOR POSSESION OF A WEAPON FOR AN ULAWFUL PURPOSE SHOULD HAVE BEEN MERGED. (Not Raised Below).
The State concedes Point III, and we agree that count two should be merged with count one. See State v. Diaz, 144 N.J. 628, 639-42, 677 A.2d 1120 (1996). We vacate the sentence on count two and remand for entry of an amended judgment of conviction. We reject defendant's remaining contentions and affirm the conviction on count one.

I
Defendant killed Thomas Harsell, her live-in boyfriend and the father of their sixteen-month-old child. She does not *563 deny the homicidal act. The relationship between defendant and Harsell was a volatile one, marked by incidents of verbal and physical altercations. Harsell was thirty-nine-years-old and physically larger and stronger than defendant, who was twenty-five-years-old.
On the day of the homicide, August 30, 1998, defendant, Harsell and their child spent the day at the beach. On the way home they argued, and defendant claims Harsell punched her in the face while in the car. The argument continued at home and included physical striking by both parties. Defendant went to the kitchen and called her brother, Michael Tierney, requesting that he come and get her. Defendant acknowledges that she struck Harsell in the head several times with the phone. According to Jeremy Rutan, Harsell's nephew and a resident of the same household, Harsell came out of the kitchen holding his head, which was bleeding profusely, exclaiming "You bitch. You bitch. You bitch."
Harsell's brother, Robert Harsell, was also a resident of the household and was present during these events. He was downstairs when he heard the argument coming from upstairs. He was accustomed to defendant and his brother fighting and said to himself "here we go again." Robert heard what sounded like "someone ... wrestling on the floor." Robert saw his brother bleeding from the head, but when his brother re-entered the house, Robert went back downstairs because he did not want to "interfere" in the fight.
Michael Tierney and a friend, Paul Dixon, arrived. Michael and Harsell argued outside. Michael was angered that Harsell had struck his sister, and he informed Harsell he was getting her out of there. Harsell told Michael to leave, that it "was none of his business." Defendant came outside, angry, and began striking Harsell in the face, yelling "You won't hit me in front of my brother now." Michael instructed his sister to go inside and get her belongings. When she went in, Michael and Harsell engaged in a physical altercation in which Dixon participated.
When defendant emerged from the house, she was carrying a knife with an eleven-inch blade. She approached Harsell and her brother, who were on the front steps. Dixon took the knife from defendant and placed it on the front seat of Michael's car. Dixon then escorted defendant to the back seat of Michael's car. Harsell and Michael continued to argue. They came over to the car. According to defendant, Harsell reached in and punched her in the face. While Harsell was standing outside the car with his back to the car, continuing to converse with Michael, defendant retrieved the knife from the front seat and stabbed Harsell once in the back, causing his death. Michael and Dixon immediately entered the car and drove off with defendant. Defendant's recollection is that Dixon was already in the car when she stabbed Harsell.
Defendant testified and described how Harsell repeatedly kicked, punched, smacked and choked her that evening. She called her brother to come and get her and the child because she was "in fear of [her] life." She stated Harsell threatened earlier in the evening that if she left he would kill her and she would never again see their child. Throughout the incident, Harsell was attempting to prevent her from leaving. She also described prior incidents where they fought physically, insisting Harsell was always the initiator. She acknowledged stabbing Harsell on one occasion in the chest with scissors. On another occasion she acknowledged cutting Harsell's tongue with the same knife with which she later killed him. She stated he placed the knife to his face because he was *564 upset and stated he wanted to die, and she pushed it causing his injury. Defendant acknowledged that Harsell never used or threatened the use of any weapons on the prior occasions or the night of the killing.
Defendant described on direct examination her reasons for stabbing Harsell:
Q And how badly do you think he was going to hurt you?
A I don't know how bad he was going to hurt me but I felt he was really going to hurt me bad.
Q Did you think he was going to do something to your brother?
A He was stopping my brother from getting in the car.
Q What was your brother trying to do?
A Get in the car.
Q And what was the purpose of getting in the car?
A To take me out of there.
Q And why do you want to leave?
A Because Tom was beating on me.
The following was elicited on cross-examination:
Q And when your brother and Paul Michael Dixon got there after a while you were able to safely get into the car, correct?
A Yes.
Q Your brother wasn't injured. Paul Michael Dixon was there to help you and despite that you felt it necessary to stab Tom Harsell in the back?
A Yes.
Q And you knew what you were doing when you stabbed him in the back?
A I was trying to leave.
Q You knew you were stabbing him when you stabbed him?
A I remember having the knife in my hand. I don't remember the actually stabbing.
Q You stabbed him purposely, correct?
A Yes.
Q Your intention was to stab him?
A My intention was to leave.
Q Your intention was to stab him when you stuck that knife in his back, correct?
A My intention was to injure him [Defense Counsel]: Objection.
A so I could leave. He wouldn't allow my brother to get in the car.
On redirect:
Q Your intention on August 30, 1998, was it to kill him?
A No, it was not.
Q And what was the purpose of you doing what you did?
A I wanted to leave. He was preventing me from leaving.
Both sides presented psychological experts on battered woman's syndrome. Dr. Marsha Kleinman, testifying for the defendant, defined the syndrome as
a woman who is 18 years of age or older who is or has been in a relationship in which she was subjected to psychological abuse which means name calling, verbal put-downs, humiliation, where there is excessive possessiveness and/or jealousy, where the batterer is excessively controlling of her whereabouts. There may or may not be physical or sexual abuse.... It's a relationship in which somebody is threatened with future harm for not doing what the person wants them to do.
She further testified that to establish the syndrome, there must be at least two cycles of abuse. First, there is a period in which tension builds up until there is a *565 violent outburst. This is followed by the batterer's apology, leading the victim to believe he will change and things will be better, which they are for a time. Then tensions begin to build again and the cycle repeats itself.
With respect to a battered woman who kills, Dr. Kleinman stated that an escalation of violence, worse than on previous occasions, normally precedes the victim's reaction to kill her batterer. Battered woman's syndrome is used to explain not only why a woman does not leave an abusive relationship but also why she has reason to fear for her life. Dr. Kleinman opined that defendant's relationship with Harsell fit the description of battered woman's syndrome.
Dr. Sandra L. Morrow testified for the State. She substantially agreed with the definition of battered woman's syndrome and the need for at least two cycles as described by Dr. Kleinman. Dr. Morrow emphasized, however, that for the syndrome to apply, the woman "must feel entrapped and unable to escape. She must have a desire to escape the situation, to not be in an abusive relationship any longer, and she must feel that she is unable to escape for whatever reason." In an interview defendant expressed to Dr. Morrow that her relationship with Harsell "was the greatest relationship she ever had." Harsell never told defendant how to dress or with whom she should or should not talk or associate. He never restricted her use of the phone or prevented her from coming or going as she pleased.
Dr. Morrow opined that defendant did not suffer from battered woman's syndrome. When asked what factors related to the syndrome she found to be lacking, she replied:
I did [n]ot find cycles to have been occurring, cycles of domestic violence. I did not find sex abuse to be occurring.
I did not find consistent threats to hurt or kill herself by her partner. I did not find there to be excessive jealously, isolation, possessiveness, keeping her isolated from other people. I did not find what's called correlates of violence in the partner, the partner had been abusing animals or abusing other people on a routine basis or abusing children. There was no history I found in this investigation to indicate he was someone who did that. Those were all absent. Those are many of the things one looks for.
We note defendant's pertinent trial testimony on cross-examination:
Q You never feared Tom was going to kill you prior to that night?
A No.
Q Prior to this time you never believed Tom was going to kill you?
A No.
Q You never were in fear of your life?
A No.
Q Tom never restrained you in the house
A No.
Q prior to this day?
A No.
Q You always could come and go as you wanted?
A Yes.
Q You were able to call people?
A Yes.
Q You were able to see people
A Yes.
Q if you wanted to?
A Yes.
Q In fact you did see people?
A Yes.
Q People came to your house?
A Yes.
Q You associated with them?
*566 A Yes.
Q Tom never tried to stop you?
A No.
Q So it was just on this one day you believed Tom was going to kill you?
A Yes.

II
Defendant argues on appeal that the jury instructions on self-defense and passion/provocation manslaughter were deficient because they failed to provide a factual context for fair consideration of battered woman's syndrome. Defendant did not object to the instructions in the trial court, R. 1:7-2, nor did defendant proffer any requests for instructions, R. 1:8-7. Indeed, on several occasions throughout the trial, Judge DeVesa invited the parties to submit requests to charge, and he furnished the parties with his tentative charges. Defense counsel consistently expressed his approval of the charges as framed by the judge.
Accordingly, our review is under the plain error standard, and we will disregard the alleged error unless it is "clearly capable of producing an unjust result." R. 2:10-2. "Under that standard, defendant has the burden of proving that the error was clear and obvious and that it affected [her] substantial rights." State v. Morton, 155 N.J. 383, 421, 715 A.2d 228 (1998), cert. denied, 532 U.S. 931, 121 S.Ct. 1380, 149 L.Ed.2d 306 (2001). The error claimed must be so egregious that it "rais[es] a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336, 273 A.2d 1 (1971).
Where, as here, the claimed error pertains to a portion of the jury charge, the charge must be examined as a whole to "determine its overall effect." State v. Wilbely, 63 N.J. 420, 422, 307 A.2d 608 (1973). In considering a jury charge, plain error is "legal impropriety in the charge prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed the clear capacity to bring about an unjust result." State v. Hock, 54 N.J. 526, 538, 257 A.2d 699 (1969), cert. denied, 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970).
Evidence of domestic abuse is relevant to a claim of self-defense. State v. Kelly, 97 N.J. 178, 197, 478 A.2d 364 (1984). Expert testimony relating to battered woman's syndrome is germane to the jury's assessment of the subjective honesty as well as the objective reasonableness of a defendant's belief that deadly force was necessary to protect herself against death or serious bodily harm. Id. at 202-04, 478 A.2d 364. Expert testimony is useful to refute common misconceptions concerning evidence of prior abuse and the reaction of battered women. Ibid. The Court likewise recognized the importance of battered woman's evidence on the issue of passion/provocation manslaughter:
It is well settled that when there is evidence of prior physical abuse of defendant by the decedent, the jury must be told that a finding of provocation may be premised on "a course of ill treatment which can induce a homicidal response in a person of ordinary firmness and which the accused reasonably believes is likely to continue." State v. Guido, 40 N.J. 191, 211, 191 A.2d 45 (1963). The jury must be instructed "to consider not only decedent's conduct and threats that night, but also his prior mistreatment of defendant." State v. Lamb, 71 N.J. 545, 551, 366 A.2d 981 (1976).
*567 [State v. Kelly, supra, 97 N.J. at 218-19, 478 A.2d 364.]
Defendant does not contend that she was restricted in her ability to present lay and expert testimony regarding prior abuse and the battered woman's syndrome. She contends the judge's "passing reference" to this evidence was inadequate to properly apprise the jury of its significance. Judge DeVesa charged the jury, following the Model Jury Charges, on selfdefense, defense of another (defendant's brother), and passion/provocation manslaughter. He supplemented the charge with specific references to the alleged prior abuse of defendant by Harsell and the battered woman's syndrome evidence.
The charge included a N.J.R.E. 404(b) limiting instruction:
Now, an example of that in this case is the evidence that has been introduced that the defendant and Thomas Harsell have assaulted each other during the course of their relationship. Normally such evidence is not permitted under our rules of evidence and this is because our rules specifically exclude evidence that a defendant has committed uncharged crimes, wrongs, or acts when it is offered only to show that a defendant has a disposition or a tendency to do wrong and therefore must be guilty of the charges in the present case.
However, our rules do permit evidence of uncharged crimes, wrongs, or acts when the evidence is used for some other purpose. Now in this case the evidence, if you choose to believe it and, remember, when I comment on the evidence, the first determination you have to make as jurors is whether you believe that that's what the evidence has shown or hasn't shown. But in any event in this case that evidence of this prior violence if you choose to believe it has been introduced only for one specific narrow purpose and that is to establish the honesty and reasonableness of the defendant's belief and the need to use deadly force for self protection and the protection of her brother on the date of the homicide.
Now whether this evidence does, in fact, support that specific purpose for which it has been offered is for you to decide. You may decide that the evidence does not support this purpose and it is not helpful to you at all. In that case you may disregard this evidence. On the other hand, you may decide that the evidence does support the purpose for which it has been offered and you may use it for that specific purpose and that purpose alone.
What you may not do is use the evidence to decide that this defendant has a tendency to commit crimes or that she is a bad person. That is, you may not decide that just because you are satisfied that she had previously assaulted Thomas Harsell she must be guilty of the crimes in question in this trial. I have admitted the evidence of prior violence or prior assaults only to help you decide the specific question of the honesty and reasonableness of the defendant's beliefs to use deadly force on the evening in question. You may not consider it for any other purpose and may not find the defendant guilty of the crimes charged simply because she had assaulted Thomas Harsell in the past.
[Emphasis added.]
In charging murder-passion/provocation manslaughter the judge charged that for defendant to be guilty of murder, the State must prove beyond a reasonable doubt that defendant did not act in the heat of passion resulting from a reasonable provocation:
In order for the State to carry its burden it must prove beyond a reasonable *568 doubt that the provocation was not sufficient to arouse the passions of an ordinary person beyond the power of her control. In this regard words alone do not constitute adequate provocation. On the other hand, a threat with a weapon, a significant physical confrontation or a prolonged course of physical abuse by the deceased that the defendant reasonably believed would continue might be considered adequate provocation. Again, the State must prove that provocation was not adequate.
....
In determining whether the State has proven the defendant did not act in the heat of passion resulting from reasonable provocation you may also consider in this regard the testimony that you have heard relating to the battered women's syndrome.
[Emphasis added.]
The self-defense charge explained that the use of deadly force may be justified only to defend against force or the threat of force of nearly equal severity and is not justified unless the defendant reasonably believes that such force is necessary to protect herself against death or serious bodily injury. The charge included the following:
A reasonable belief is one which would be held by a person of ordinary prudence and intelligence situated as this defendant was. Self-defense exonerates a person who uses force in the reasonable belief that such action was necessary to prevent his or her death or serious injury even if that belief is later proven to be mistaken. Accordingly, the law requires only a reasonable belief, not necessarily a correct, judgment.
In this regard, evidence has been introduced explaining the battered women's syndrome. You may consider this evidence for the purpose of determining whether the defendant honestly and reasonably believed that deadly force was necessary to protect herself against Thomas Harsell.
[Emphasis added.]
Judge DeVesa conducted a comprehensive charge conference. See R. 1:8-7(b). Prior to the conference, the judge furnished both counsel with complete copies of the proposed charge as prepared by the judge. He reviewed it in detail, with references to applicable case law pertaining to the issue now raised on appeal. See State v. Gartland, 149 N.J. 456, 694 A.2d 564 (1997); State v. Coyle, 119 N.J. 194, 574 A.2d 951 (1990); State v. Guido, 40 N.J. 191, 191 A.2d 45 (1963). Both counsel expressed their approval. When the judge inquired whether counsel wished for him to summarize the testimony in his jury charge, the prosecutor replied in the negative, and defense counsel replied, "I agree with [the prosecutor]. I believe this jury has been attentive and I don't think it's necessary in this case."
We are satisfied that the charge as a whole properly guided the jury to consider evidence of prior abuse and of battered woman's syndrome in its evaluation of defendant's claims of self-defense and reasonable provocation. The charge adequately instructed the jury to consider alleged prior abuse and its effect on defendant, as well as the events on the occasion of the homicide, in evaluating both claims by defendant. This charge does not suffer from infirmity identified in State v. Gartland, where the judge instructed the jury to consider evidence of prior abuse in determining the issue of provocation but did not charge that such evidence should be considered in determining the issue of self-defense. State v. Gartland, supra, 149 N.J. at 472-73, 694 A.2d 564.
*569 We further note that defense counsel argued vigorously in summation the selfdefense theory, incorporating the battered woman's syndrome aspect:
Self-defense. That's what this case is all about. In my opening I said a police officer in the line of duty, he kills, that's a homicide, but many times, oftentimes it's a justifiable homicide. An intruder in a home comes into a home threatens one's family, puts someone in immediate terror of getting hurt, that person gets killed. That's a homicide. That's a justifiable homicide. A man beating a woman relentlessly, not allowing her to leave, beating her brother, beating the daylights out of anyone getting in his way, ignoring everything, an out of control individual is what she was dealing with. What was in her mind. This is the first time she had ever been threatened to be killed. First time she had ever lost her child. You don't have to be a genius to figure this out, members of the jury. That's supported by Dr. Kleinman.
[Emphasis added.]
"The argument of counsel, although not a substitute for a correct charge, can mitigate the prejudicial effect of an erroneous charge." State v. Morton, supra, 155 N.J. at 423, 715 A.2d 228. It is not plain error when jury instructions are not incorrect but merely capable of being improved. State v. Delibero, 149 N.J. 90, 106-07, 692 A.2d 981 (1997). Defendant's failure to "interpose a timely objection constitutes strong evidence that the error belatedly raised here was actually of no moment." State v. White, 326 N.J.Super. 304, 315, 741 A.2d 143 (App.Div.1999), certif. denied, 163 N.J. 397, 749 A.2d 371 (2000).
In view of the evidence presented and arguments made by both parties, and the charge given, we are satisfied the jury understood the significance of the alleged prior abuse and battered woman's syndrome. Any suggestions defendant now makes that could have improved the charge by making it more detailed and specific do not render the charge erroneous. We find no error, and, certainly, in light of the extensive evidence and arguments presented by the parties, no plain error.
We recognize that accurate and understandable jury instructions in criminal cases are essential to a defendant's right to a fair trial and that it is sometimes necessary to go beyond the Model Jury Charges to properly guide the jury. State v. Concepcion, 111 N.J. 373, 379, 545 A.2d 119 (1988). "[T]he better practice is to mold the instruction in a manner that explains the law to the jury in the context of the material facts of the case." Ibid. Nevertheless, "not every failure to do so is fatal." State v. Bilek, 308 N.J.Super. 1, 10, 705 A.2d 366 (App.Div.1998) (citing State v. Baker, 303 N.J.Super. 411, 414, 697 A.2d 145 (App.Div.), certif. denied, 151 N.J. 470, 700 A.2d 882 (1997)); see also State v. Morton, supra, 155 N.J. at 422, 715 A.2d 228 (holding that the facts were neither too complex nor confusing to require intricate discussion in the charge); State v. White, supra, 326 N.J.Super. at 315, 741 A.2d 143 (holding "the charge given, as a whole, was consistent with the factual theories advanced by the parties").
In this case, there was no need for explanation beyond that given by the trial judge, either in reference to the facts of the case or in a more detailed explication of the legal principles. Defendant expressly declined the opportunity to propose further explanation in either regard. The charge appropriately explained the law in accordance with the theories of the case as put forward by the parties through their evidence and arguments.
*570 We next consider defendant's argument that failure to instruct the jury on principles of imperfect self-defense constitutes reversible error. No such charge was requested in the trial court, and we thus evaluate the argument under the plain error principles expressed in Part II of this opinion. Defendant argues the jury should have been instructed that an honest but un reasonable belief (imperfect selfdefense) that she needed to resort to the use of deadly force to protect herself could be the basis for finding a lesser form of homicide than murder.
In order to establish a justification defense, our Criminal Code requires an honest and reasonable belief in the necessity to use force. State v. Bowens, 108 N.J. 622, 630, 532 A.2d 215 (1987); State v. Hines, 303 N.J.Super. 311, 323, 696 A.2d 780 (App.Div.1997). Imperfect self-defense means "an honest subjective belief on the part of the killer that his or her actions were necessary for his or her safety, even though an objective appraisal by reasonable people would have revealed not only that the actions were unnecessary, but also that the belief was unreasonable." State v. Bowens, supra, 108 N.J. at 628, 532 A.2d 215.
Imperfect self-defense is not a recognized defense in New Jersey. State v. Branch, 155 N.J. 317, 329, 714 A.2d 918 (1998); State v. Bowens, supra, 108 N.J. at 641, 532 A.2d 215. However, the imperfect self-defense theory can be relevant to a defendant's state of mind. State v. Bowens, supra, 108 N.J. at 641, 532 A.2d 215. For example:
If a defendant subjectively thinks that self-defense is necessary but does not intend fatal injury, in either the sense of knowledge or purpose, such evidence is relevant to the State's case on that issue. If such a defendant is aware that his or her acts create a risk of serious harm but unreasonably disregards that risk, then, if the essential elements of the crime are present, the defendant can be found guilty of manslaughter ... instead of murder.

[Ibid.]
However, because the Code does not provide an independent category of justification for imperfect self-defense, the trial court "need not charge separately that `imperfect self-defense would serve to reduce murder to an unspecified degree of manslaughter.'" State v. Coyle, supra, 119 N.J. at 228, 574 A.2d 951. The Court found no error with the trial court's omission of a charge on imperfect self-defense, especially when the charges on purposeful murder, aggravated manslaughter, reckless manslaughter and passion/provocation manslaughter properly encompassed all issues. Ibid. That is the situation in the case before us.
We find defendant's reliance on State v. Pridgen, 245 N.J.Super. 239, 584 A.2d 869 (App.Div.), certif. denied, 126 N.J. 327, 598 A.2d 886 (1991), unpersuasive. This case is more akin to State v. Vasquez, 265 N.J.Super. 528, 628 A.2d 346, (App.Div.), certif. denied, 134 N.J. 480, 634 A.2d 527 (1993). In Pridgen, defendant, although indicted for murder, was convicted of aggravated manslaughter. State v. Pridgen, supra, 245 N.J.Super. at 241, 584 A.2d 869. Defendant requested charges on all lesser included offenses to murder and imperfect self-defense. Id. at 244, 584 A.2d 869. The trial court refused to instruct the jury on passion/provocation manslaughter and imperfect self-defense. Id. at 245, 584 A.2d 869. We held it was error for the trial court to not explain the impact of imperfect self-defense on a murder charge. However, because defendant was convicted of aggravated manslaughter instead of *571 murder, defendant suffered no harm. Id. at 248, 584 A.2d 869.
Unlike Pridgen, appellant here did not request a jury instruction on imperfect self-defense. Moreover, similar to Coyle, and Vasquez, "[i]n light of the fact that the trial court instructed the jury on murder, aggravated manslaughter, passion/provocation manslaughter, and reckless manslaughter, no need arose for the judge to charge on imperfect self-defense." Vasquez, supra, 265 N.J.Super. at 552, 628 A.2d 346. We find no error in the judge's failure to sua sponte charge imperfect selfdefense.
The matter is remanded for entry of an amended judgment of conviction reflecting that count two is merged with count one. In all other respects the judgment of conviction is affirmed.