**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3512-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOHN A. JORGES, a/k/a JJ,

     Defendant-Appellant.

_____

Submitted April 20, 2020 – Decided July 10, 2020

Before Judges Vernoia and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 16-05-0334.

Joseph E. Krakora, Public Defender, attorney for appellant (Ruth Elizabeth Hunter, Designated Counsel, on the brief).

Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent (Kelsey A. Ball, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant, John A. Jorges, appeals from his trial conviction for unlawful possession of a handgun. Defendant was carrying the loaded weapon in his waistband when he was stopped in his car by police officers who were investigating a threatening telephone call defendant made to the Governor's Office. Defendant contends the trial court erred in denying his motion to suppress the firearm. He asserts the court should not have credited the suppression hearing testimony of the police officer who seized the weapon because of inconsistencies between the officer's testimony and his police report. Defendant further contends that the prosecutor made inappropriate remarks in his opening and closing statements at trial. Defendant also challenges his sentence, claiming that the prosecutor committed a gross and patent abuse of discretion by refusing to reduce the mandatory minimum term of parole ineligibility pursuant to N.J.S.A. 2C:43-6.2. Finally, defendant contends that gap time credit awarded at sentencing should instead have been credited as time served. After carefully reviewing the record in light of the applicable principles of law and the arguments of the parties, we reject all but one of defendant's contentions. We agree, as does the State, that defendant should be credited with fourteen days of time-served jail credit. In all other respects, we affirm defendant's conviction and sentence.

I.

A Union County Grand Jury charged defendant in a two-count indictment with: (1) second-degree unlawful possession of a weapon, in violation of N.J.S.A. 2C:39-5(b), and (2) second-degree possession of a weapon for an unlawful purpose, in violation of N.J.S.A. 2C:39-4(a)(1). At a status conference in January 2016, defense counsel advised the court that defendant wished to accept a plea offer that had been tendered by the prosecutor. As explained to the court by defense counsel, in exchange for defendant's guilty plea, the State would agree to reduce the mandatory minimum sentence from forty-two months to twelve months of parole ineligibility. The judge indicated that defendant would appear before a different judge in a few days to enter the guilty plea. However, that plea hearing did not materialize, and defendant never pleaded guilty.[1]

In February 2017, a different judge convened an evidentiary hearing to address defendant's motion to suppress the handgun. The judge denied defendant's motion for reasons explained in a comprehensive and detailed oral opinion. Defendant was tried before a jury over the course of three days in

---

[1] The record does not explain why the plea hearing was not convened. Nor does the record indicate when the pretrial plea offer described by defense counsel expired.

A-3512-17T1

September 2017.  After both parties rested, the prosecutor moved to dismiss the count charging possession of a firearm for an unlawful purpose.  The jury convicted defendant of the remaining second-degree firearms count.

In February 2018, the sentencing court denied defendant's application to reduce the mandatory forty-two-month term of parole ineligibility prescribed by N.J.S.A. 2C:43-6(c).  The court concluded that the State did not commit a gross and patent abuse of prosecutorial discretion in refusing to consent to a waiver or reduction of the mandatory minimum sentence pursuant to N.J.S.A. 2C:43-6.2.  The trial judge proceeded to sentence defendant to a state prison term of forty-two months of imprisonment with a forty-two-month period of parole ineligibility.

The court thereafter realized that it had sentenced defendant to a prison term within the third-degree range instead of the second-degree range that applies to defendant's handgun conviction.  See N.J.S.A. 2C:43-6(a)(2), (3) (prescribing ordinary terms of imprisonment for second- and third-degree crimes).  Fourteen days after the initial sentencing proceeding, the court resentenced defendant to a state prison term of five years of imprisonment during which defendant must serve forty-two months before becoming eligible for parole.  The judge awarded defendant fourteen days of gap time for February

4

9, 2018, to February 22, 2018, reflecting the time between the initial sentencing hearing and the resentencing proceeding.

## II.

We briefly summarize relevant portions of the evidence adduced by the State at trial to place the legal issues before us in context. In October 2015, defendant's shop received a sales tax bill from the State of New Jersey. Exasperated and in dire financial straits, defendant called the Governor's office in an attempt to obtain information about the tax bill. Defendant was put in contact with a representative from the tax office. Not satisfied with that representative's answers, defendant placed a second call to the Governor's office. Defendant provided his tax ID number, driver's license number, social security number, and the address of his shop. He proceeded to warn the Governor's office that he "was going to drive to Virginia, [he] was going to purchase a handgun, and [he] was going to go rob liquor stores and little old ladies."

Two Linden municipal law enforcement officers, Officer James Garrison and Detective Jason Mohr, were dispatched to defendant's residence to conduct a follow-up investigation of the warning defendant had given to the Governor's office. Defendant was not home when the officers arrived. While Officer Garrison and Detective Mohr were conversing with defendant's girlfriend, they

observed a white Chevy Corsica with flames painted on it approach the house and then drive off. Officer Garrison knew that this vehicle belonged to defendant. The officers observed the vehicle turn right on to another street without using a turn signal.

The officers entered their vehicle and followed the Corsica. When the officers caught up with defendant's car, they initiated a motor vehicle stop. Detective Mohr approached on the driver's side while Officer Garrison approached from the passenger's side. Officer Garrison used a flashlight to illuminate the interior. After asking defendant for his credentials, Detective Mohr moved towards the rear of the vehicle. At that point, Officer Garrison observed defendant lift his shirt and place his hand on what appeared to be a handgun. Officer Garrison quickly moved to the driver's side of the vehicle, reached through the window, and retrieved the handgun from defendant's waistband. The gun was loaded with nine rounds of ammunition in the magazine and an additional round in the chamber.

## III.

Defendant raises the following contentions for our consideration:

POINT I

THE MOTION JUDGE'S FACTUAL FINDINGS THAT GARRISON VIEWED THE GUN IN PLAIN

6

VIEW WERE "CLEARLY MISTAKEN" AND "SO WIDE OF THE MARK" THAT THE "INTERESTS OF JUSTICE REQUIRE[] APPELLATE INTERVENTION" DUE TO THE INCONSISTENCIES IN THE OFFICER'S TESTIMONY.

POINT II

THE STATE'S COMMENTS DURING ITS CLOSING AND OPENING STATEMENTS DEPRIVED DEFENDANT OF A FAIR TRIAL.

POINT III

THIS COURT SHOULD VACATE THE ORDER DENYING DEFENDANT'S APPLICATION UNDER THE GRAVE'S ACT ESCAPE VALVE, N.J.S.A. 2C:43-6.2, AND REMAND FOR RESENTENCING.

POINT IV

THE [FOURTEEN] DAYS OF GAP-TIME AWARDED ON THE AMENDED JUDGMENT OF CONVICTION SHOULD HAVE BEEN GIVEN AS PRIOR SERVICE CREDIT.

IV.

We first address defendant's contention that the handgun should have been suppressed. The gravamen of defendant's argument is that that the motion judge erred in finding that Officer Garrison was a credible witness. Defendant contends the officer gave inconsistent testimony at the suppression hearing. The motion judge carefully considered that argument and rejected it. We too find

7

defendant's argument unpersuasive and defer to the motion court's well-reasoned credibility findings.

Officer Garrison testified that he observed the gun while looking into the cabin from the passenger side of the vehicle. Specifically, Garrison stated that,

> I approached the vehicle on the passenger side. Detective [Mohr] asked for [defendant's] credentials, once he retrieved them, he retreated to the rear of the vehicle to radio other units still on scene. And that's when I observed [defendant] lift his shirt, place his hand on a black handgun. . . . I quickly moved around to the driver's side, reached inside, gained control of his hands and the handgun.

Garrison maintained throughout the hearing that he saw the gun while he was still on the passenger side, before he rushed to the driver's side to confiscate the weapon. In his police report filed shortly after the encounter, he had stated, "I observed [defendant] reach toward his waistband and lift his shirt. At this time I maintained constant visual of [defendant] and quickly moved to the driver's side. As I got to the driver's door, I immediately observed a black handgun in defendant's waistband."

Garrison acknowledged at the hearing that his report intimates he did not see the gun until after he had repositioned to the driver's side of the vehicle. He clarified, "[w]hen I was at the passenger side, I saw his hand on the handle. I knew then it was a handgun. When I got to the driver's side, for report purposes,

A-3512-17T1

I could actually identify that as a handgun." Further, Garrison testified he believed defendant had a handgun by the way defendant was placing his hand on his waistband.

Several additional pertinent facts were adduced at the suppression hearing. Officer Garrison had been advised in the past that defendant might be carrying a weapon, and on the night of the arrest, Garrison believed defendant was armed and dangerous. Additionally, when Officer Garrison approached the driver's side window, he asked defendant, "[d]o you still have that hammer," referring to a gun. Defendant then raised his hands and Garrison reached into the window and removed the handgun from defendant's waistband. Garrison explained that he did not shout "gun" or otherwise alert Detective Mohr when he first saw the weapon because the detective had his back to defendant and Garrison was concerned that defendant might panic and shoot the detective.

The motion judge issued a thorough and detailed oral opinion spanning forty-five pages of transcript. The court explicitly and carefully addressed the asserted inconsistencies in Officer Garrison's testimony and found him to be credible. The court rejected defense counsel's contention that the officer "tailored" his testimony. In contrast, the motion court found defendant's testimony at the suppression hearing was not credible. The court noted

defendant was non-responsive at times and added information that was not asked of him.

The law is well-settled that when reviewing a trial court's decision in a motion to suppress, appellate courts defer to the trial court's factual findings so long as they are "supported by sufficient credible evidence in the record." State v. Gamble, 218 N.J. 412, 424 (2014) (citing State v. Elders, 192 N.J. 224, 243 (2007)). Furthermore, "a trial court's findings should be disturbed only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" Elders, 192 N.J. at 244 (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). This foundational principle recognizes that "findings of the trial judge . . . are substantially influenced by his opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Johnson, 42 N.J. at 162.

In this case, the motion court had the opportunity to view Officer Garrison's testimony firsthand. The court explained that the officer "was calm, clear and straight forward while testifying. His testimony was largely consistent. [He] was responsive to the questions asked and did not add information beyond what was asked of him." The judge also observed that the dashcam video appeared to corroborate the officer's version of events. In these

circumstances, we do not hesitate to accept the motion court's factual finding that Officer Garrison observed what he reasonably believed to be a handgun before he reached into the passenger cabin and retrieved the weapon from defendant's waistband.

Although the motion court found that the State had proved that the weapon was observed in "plain view," we are not convinced that it was necessary for the State to establish all of the elements of the plain view exception to sustain the lawfulness of the seizure of the handgun in this case.[2] The record before us clearly shows that during a lawful investigative detention, Officer Garrison

---

[2] See State v. Mann, 203 N.J. 328, 341 (2010) (holding seizure of drugs from car was lawful under the plain view exception to the warrant requirement). In State v. Gonzales, 227 N.J. 77, 100–01 (2016), the New Jersey Supreme Court embraced longstanding United States Supreme Court precedent and eliminated the "inadvertence" prong of the plain view exception. The Court held that this revision to New Jersey search and seizure jurisprudence applies prospectively to searches conducted after November 15, 2016.

The seizure in this case occurred before the Court eliminated the inadvertence element of the plain view exception. However, we need not address whether the discovery of the firearm on defendant's person was inadvertent. For one thing, defendant does not contend on appeal that the State failed to establish the inadvertence prong of the plain view exception. Rather, as noted, defendant's argument focuses on the officer's credibility as a witness. In any event, we conclude that the seizure of the handgun from defendant's waistband was clearly lawful under the search-incident-to-arrest exception. See S.S., 229 N.J. at 380 (noting that because legal issues do not implicate the fact-finding expertise of the trial courts, appellate courts construe the Constitution, statutes, and common law "de novo—'with fresh eyes'") (emphasis omitted).

developed probable cause to believe defendant was carrying a concealed firearm.

At the moment probable cause ripened, the officer was authorized to make an arrest and conduct a search of the defendant's person incident to that arrest. State v. Dangerfield, 171 N.J. 446, 455–56 (2002); see also State v. O'Neal, 190 N.J. 601, 614 (2007) (holding that it does not matter that police searched and removed contraband before placing the defendant under arrest because when police search a person before arresting him "as part of a single, uninterrupted transaction, it does not matter whether the arrest precedes the search;" it is the "'right to arrest,' rather than the actual arrest[,] that must pre-exist the search" (citations omitted)). Accordingly, the seizure of the weapon from defendant's waistband was lawful and the handgun was properly admitted into evidence.

## V.

We turn next to defendant's contention that the prosecutor made inappropriate comments in both his opening and closing statements. We begin our analysis by acknowledging legal principles that impose limits on trial advocates in general and prosecutors in particular. We afford prosecutors at trial considerable leeway so long as their comments are reasonably related to the scope of the evidence presented. State v. Harris, 141 N.J. 525, 559 (1995). The

12

New Jersey Supreme Court has recognized that "[c]riminal trials are emotionally charged proceedings. A prosecutor is not expected to conduct himself in a manner appropriate to a lecture hall. He is entitled to be forceful and graphic in his summation to the jury, so long as he confines himself to fair comments on the evidence presented." State v. Timmendequas, 161 N.J. 515, 587 (1999) (quoting State v. DiPaglia, 64 N.J. 288, 305 (1974) (Clifford, J., dissenting)). We emphasize, however, that the State is "limited to commenting on the evidence and to drawing any reasonable inferences supported by the proofs." State v. Dixon, 125 N.J. 223, 259 (1991) (citation omitted). "[P]rosecutors are prohibited from casting unjustified aspersions on the defense or defense counsel." State v. Nelson, 173 N.J. 417, 461 (2002) (citing State v. Smith, 167 N.J. 158, 177 (2001)).

## A.

In his opening statement, the prosecutor remarked, "[s]o I want to go back to October 30, 2015. On that date at about 7 o'clock at night Linden police officers, Jason Mohr and James Garrison were looking for [defendant]. They were looking to speak to [defendant] so they went to his house at [address] in Linden."

Defendant now claims for the first time on appeal that it was inappropriate for the prosecutor to tell the jury that police "were looking for" him. We disagree. This was not a situation where the prosecutor was alluding to some unlawful activity about which the jury would not be apprised. Officer Garrison and Detective Mohr were indeed looking for defendant for the purpose of investigating the threatening message he had made to the Governor's Office. Evidence of defendant's message to the Governor's office was introduced at trial. The jury would thus learn that the motor vehicle stop during which the firearm was seized was not a random encounter but rather was incident to the follow-up investigation that officers Garrison and Mohr were assigned to conduct. The prosecutor in his opening statement was allowed to refer to that anticipated evidence.

We note that defense counsel did not object to the prosecutor's opening statement. We view defense counsel's failure to object as strong indication that the prosecutor's belatedly challenged remark was of no moment. See State v. Tierney, 356 N.J. Super. 468, 481 (App. Div. 2003) ("Defendant's failure to 'interpose a timely objection constitutes strong evidence that the error belatedly raised here was actually of no moment.'" (quoting State v. White, 326 N.J. Super. 304, 315 (App. Div. 1999))). In sum, we do not believe the prosecutor's

14

reference to the fact that the officers were looking for him was error, much less plain error clearly capable of producing an unjust result.  R. 2:10-2.

B.

We turn next to defendant's contention that the prosecutor committed misconduct during the State's summation.   In his closing argument, the prosecutor remarked:

> [The defense attorney] talked about a lot of things that maybe weren't so clear when Officer Garrison testified. You know what she didn't bring up?  All of the times Officer Garrison's testimony [was] corroborated by other sources, by the dash cam footage, by his partner who was at the scene, by physical evidence, by the defendant.   [The defense attorney] didn't talk about that.  I'm going to.

Defense counsel objected to this statement, but the objection was overruled.

A prosecutor is permitted to respond forcefully to arguments raised by defense counsel in summation.  See Dixon, 125 N.J. at 259 (noting a prosecutor may "make 'a vigorous and forceful presentation of the State's case'") (quoting State v. Bucanis, 26 N.J. 45, 56 (1958)).  The prosecutor thus had every right to refute defense counsel's argument by highlighting the evidence that corroborated Officer Garrison's testimony.  The issue before us is whether the prosecutor went too far by commenting on the fact that defense counsel in her summation chose not to mention evidence that was favorable to the prosecution.  In deciding this

15

question, we note that it is one thing to criticize a defense counsel's argument on its merits. It is another thing to criticize counsel him/herself. We thus must determine whether in this instance the prosecutor improperly cast aspersion on counsel by intimating that she had been less than forthright with the jury.

Although we believe that the prosecutor in this case came uncomfortably close to the line, we conclude the principal effect of the prosecutor's remark was not to cast aspersion on defense counsel so much as to highlight different facts in evidence than the facts defense counsel chose to emphasize. This was not a situation where, as in State v. Frost, the prosecutor impugned defense counsel's closing argument as "lawyer talk." 158 N.J. 76, 86 (1999). Nor are the prosecutor's remarks in the case before us comparable to the comment we condemned in State v. Neal, where the prosecutor complained to the jury "that defendant's calling of character witnesses was 'quite shameless.'" 361 N.J. Super. 522, 535 (App. Div. 2003).

Viewed in context, we do not believe the prosecutor's comment in this case was tantamount to accusing defense counsel of misleading the jury by omission. A defense lawyer, of course, is under no obligation to remind the jury of evidence favorable to the prosecution and thus should not be criticized tacitly by a prosecutor for being selective in discussing the evidence. We caution that

16

prosecutors would be well advised to confine their rebuttal remarks in summation to the merits of the arguments of counsel and not the manner in which counsel presented those arguments to the jury. See Dixon, 125 N.J. at 259 (noting a prosecutor is "limited to commenting on the evidence and to drawing any reasonable inferences supported by the proofs").

Although we believe the prosecutor came close to crossing the line in this case, we conclude that the prosecutor's off-hand remark did not deprive defendant of a fair trial. The New Jersey Supreme Court has instructed that the proper yardstick in determining whether a prosecutor's trial remarks warrant reversal is whether the prosecutor's conduct was "so egregious that it deprived the defendant of a fair trial." State v. Wakefield, 190 N.J. 397, 467 (2007) (quoting State v. Pennington, 119 N.J. 547, 565 (1990)). In this instance, the prosecutor's brief, isolated comment on what defense counsel chose not to tell the jury was not egregious.

We add that the jury was instructed on two occasions that statements by attorneys, including opening and closing statements, are not evidence. We note also that the State's evidence that defendant was carrying a handgun on his person in public was overwhelming, notwithstanding any inconsistencies in Officer Garrison's testimony as to when he first saw the weapon. See State v.

Pressley, 232 N.J. 587, 594 (2018) (finding that a prosecutor's misstatement of the law in summation was incapable of producing an unjust result, "particularly in light of the overwhelming evidence of defendant's guilt"). In these circumstances, we conclude the prosecutor's comment simply does not rise to the level where defendant's right to a fair trial is implicated.

VI.

Defendant next contends that the mandatory minimum sentence prescribed by N.J.S.A. 2C:43-6(c) should not have been imposed. That contention lacks sufficient merit to warrant extensive discussion. R. 2:11-3(e)(2). The mandatory minimum sentence for unlawful possession of a firearm must be imposed unless the prosecutor consents to waive or reduce the parole ineligibility term pursuant to N.J.S.A. 2C:43-6.2. The prosecutor's decision is subject to judicial review under a gross and patent abuse of discretion standard. State v. Watson, 346 N.J. Super. 521, 535 (App. Div. 2002). A patent and gross abuse of discretion is a decision so wide off the mark of the goals sought to be accomplished that fundamental fairness and justice require judicial intervention. State v. Watkins, 193 N.J. 507, 520 (2008) (citing State v. Wallace, 146 N.J. 576, 582–83 (1996)); see also State v. Alvarez, 246 N.J. Super. 137, 147 (App. Div. 1991) (noting application of N.J.S.A. 2C:43-6.2 is subject to the consent of

18

the prosecutor unless defendant shows the prosecutor acted "arbitrarily or unconstitutionally discriminated" against him or her).

In this case, the sentencing court found that the prosecutor properly considered all applicable aggravating and mitigating factors, including the mitigating circumstances of defendant's age—he was sixty-eight years old—and the absence of a criminal record. The court further concluded that the prosecutor complied with the Attorney General Directive that channels the exercise of prosecutorial discretion in deciding whether to reduce the statutorily stipulated sentence for firearms offenders.[3]

Our own review of the record leads us to conclude that the prosecutor's decision was not an abuse of prosecutorial discretion, much less a gross and patent abuse. Accordingly, we affirm the imposition of the statutorily prescribed forty-two month parole ineligibility term.

---

[3] See "Attorney General Directive to Ensure Uniform Enforcement of the 'Graves Act'" (Oct. 23, 2008, as corrected Nov. 25, 2008) (Directive). The Directive provides that a prosecutor can take into account the likelihood of a conviction at trial, and further provides that the prosecutor "shall consider all relevant circumstances concerning the offense conduct and the offender, including those aggravating and mitigating circumstances set forth in N.J.S.A. 2C:44-1." Directive at 12.

## VII.

Finally, defendant contends that the amended Judgment of Conviction (JOC) incorrectly awarded defendant fourteen days of "gap time" from February 9, 2018 (the date of the original sentencing) to February 22, 2018 (the date of resentencing). Defendant contends that the sentencing court should instead have awarded him fourteen days of credit for time served. The State on appeal acknowledges that the JOC should be amended to reflect fourteen days of prior service credit instead of gap time. We agree. Accordingly, we remand this case for the sole purpose of amending the JOC to reflect the correct amount of jail credit. In all other respects, defendant's conviction and sentence are affirmed.

Affirmed in part and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3512-17T1