**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4757-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CLINTON SCOTT,
a/k/a ABDUL MALIK
MUMALLIK, MALIK SCOTT
TROY DEBERRY, and
COUPE,

     Defendant-Appellant.

_____

Argued June 8, 2021 – Decided July 9, 2021

Before Judges Fisher, Gilson, and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 17-08-2189.

Andrew M. Kuntz, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Andrew M. Kuntz, on the briefs).

Matthew E. Hanley, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens, II, Acting Essex

County Prosecutor, attorney; Matthew E. Hanley, of counsel and on the brief).

PER CURIAM

An attendant at a gas station was robbed at gunpoint. A jury convicted defendant Clinton Scott[1] of second-degree robbery, N.J.S.A. 2C:15-1(a)(1); second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2(a)(1) and N.J.S.A. 2C:15-1(a)(1); fourth-degree possession of an imitation weapon for an unlawful purpose, N.J.S.A. 2C:39-4(e); second-degree eluding arrest, N.J.S.A. 2C:29-2(b); and second-degree aggravated assault while eluding, N.J.S.A. 2C:12-1(b)(6). Defendant was sentenced to an aggregate prison term of twenty-six years with periods of parole ineligibility and parole supervision as prescribed by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

Defendant appeals, arguing that the trial court committed plain error in not molding the jury instructions on his defense of duress and in imposing an excessive sentence given the disparity between defendant's sentence and the sentence of a co-defendant. We are not persuaded by these arguments and affirm.

---

[1] Defendant now uses the name Abdul Malik Mumallik.

A-4757-18

I.

On June 12, 2017, the attendant at a Shell gas station in Bloomfield was robbed. There is no dispute that defendant and co-defendant William Jones committed the robbery. The dispute is whether defendant participated in the robbery and the ensuing eluding under duress.

The facts at trial establish that during the evening of June 12, 2017, defendant drove a black Acura into a Shell gas station. Jones was also in the car, sitting in the front passenger seat. The attendant testified that after he pumped $3.00 worth of gas into the car, the driver grabbed his shirt and demanded money. The attendant saw that the passenger was pointing a gun at him. Accordingly, the attendant reached into his pocket and gave the driver everything he had, which included two access cards and over $300 in cash. The driver then reached into the attendant's pocket, removed his cell phone, but returned it to the attendant. According to the attendant, the driver told him to turn around and walk away and the car left the station. Thereafter, the attendant called 911 and the police responded within minutes.

A police officer and sheriff's officer testified that they were both on patrol that night when they were dispatched to intercept the robbery suspects. The police officer saw a black Acura turn onto the Garden State Parkway, followed,

A-4757-18

and activated his car lights and sirens. The car sped off, and a high-speed chase ensued. Eventually, the Acura turned off the Parkway and collided with a white Honda. The sheriff's officer arrested the driver, who was later identified as defendant. The police officer arrested the passenger, who was later identified as Jones. The driver of the Honda was taken to the hospital and treated for herniated discs in her spine.

A detective with the Prosecutor's Office obtained a warrant to search the Acura. A black airsoft handgun was found under a seat cushion and two access cards were found on the floor in front of the passenger seat. A search incident to the arrest of Jones revealed he had $393.05 in cash in his pocket.

Defendant and Jones were indicted for the robbery and related crimes. Defendant was also indicted for eluding and causing an injury while eluding.

Before trial, defendant gave notice that he would rely on the defense of duress. Thereafter, Jones entered into a plea agreement under which he pled guilty to second-degree robbery and agreed to testify against defendant.

Defendant elected to testify at trial, and his testimony was in marked contrast to the testimony given by Jones. Jones testified that he had known defendant since childhood. On June 12, 2017, defendant picked Jones up in his car and they visited defendant's mother at a nursing home. Following the visit,

defendant and Jones drove to a gas station, where they "bicker[ed]" about whether they would rob the attendant and, if so, who would use a gun. Ultimately, Jones pulled the gun and pointed it at the attendant and defendant demanded and took money from the attendant.

Defendant acknowledged he and Jones were together on June 12, 2017. He explained that after they visited his mother, they stopped at a Shell station to get gas. According to defendant, Jones pulled out a gun, placed it toward defendant's back, and told defendant to grab the money from the attendant. Defendant claimed he felt afraid and that the attendant took money from his pockets and put it on the vehicle's dashboard. Jones then instructed defendant to check the attendant's pockets and after defendant patted the attendant down, defendant told the attendant to walk away.

Defendant went on to testify that Jones directed him to get onto the highway. While they were driving, Jones had the gun resting on his lap, and the barrel of the gun was pointed toward defendant. Defendant acknowledged that he did not stop when the police started to pursue his vehicle but claimed he did not stop because he feared Jones might do something.

At the close of the evidence, the court held a charge conference, during which the duress charge was reviewed. Defense counsel assented to the charge.

A-4757-18

Thereafter, the trial judge instructed the jury, including the model jury charge on duress. After the judge gave the instruction, defendant did not object to the duress charge or request any modification. After hearing the testimony and considering the evidence, the jury convicted defendant of robbery, conspiracy to commit robbery, possession of an imitation weapon for an unlawful purpose, eluding, and aggravated assault while eluding.

Following defendant's trial, Jones withdrew his plea to second-degree robbery and pled guilty to second-degree conspiracy to commit robbery. Thereafter, Jones was sentenced to special probation Drug Court. In allowing Jones into the Drug Court probationary program, the sentencing judge found, among other things, mitigating factor twelve, N.J.S.A. 2C:44-1(b)(12), noting Jones' willingness to cooperate with law enforcement.

At defendant's sentencing, the court merged the conspiracy conviction with the robbery conviction and sentenced defendant to an extended term of sixteen years in prison subject to NERA. The court merged the eluding conviction with the aggravated assault conviction and then sentenced defendant to ten years in prison with periods of parole ineligibility and parole supervision as prescribed by NERA. The court directed that the aggravated-assault sentence was to run consecutive to the sentence for robbery. Finally, on the conviction

for possession of an imitation weapon for an unlawful purpose, defendant was sentenced to eighteen months in prison to run concurrent with the other sentences. Consequently, in total, defendant was sentenced to twenty-six years in prison subject to NERA.

## II.

Defendant appeals and presents two arguments for our consideration:

POINT I – THE TRIAL COURT COMMITTED PLAIN ERROR IN CHARGING THE JURY ON THE DEFENSE OF DURESS. IGNORING STATE V. CONCEPCION, 111 N.J. 373 (1988) AND NUMEROUS OTHER DECISIONS, THE COURT'S CHARGE FAILED TO MOLD THE INSTRUCTION TO EXPLAIN THE LAW IN THE CONTEXT OF THE EVIDENCE, WHICH INVOLVED DEFENDANT'S EXCULPATORY TESTIMONY AND JONES' TESTIMONY ADMITTING THAT HE AND DEFENDANT "ARGUED" AND "BICKERED" BEFORE THE ROBBERY.

POINT II – THE SENTENCES IMPOSED ON DEFENDANT AND WILLIAM JONES ARE SHOCKINGLY DISPARATE. JONES, WHO WIELDED THE WEAPON DURING THE ROBBERY AND WHO, BY HIS OWN TESTIMONY, MADE THE DECISION TO ROB THE GAS STATION ATTENDANT, WAS SENTENCED TO DRUG COURT, A PROBATIONARY SENTENCE. DEFENDANT'S SENTENCE WAS TWENTY-SIX YEARS IN STATE PRISON WITH APPROXIMATELY TWENTY-TWO YEARS PAROLE INEL[I]GIBILITY. DEFENDANT'S

7

SENTENCE IS UNLAWFUL BECAUSE OF THAT
DISPAR[I]TY.

We discern no reversible error and affirm defendant's convictions and sentence.

A.    The Instruction on Duress

"Accurate and understandable jury instructions in criminal cases are essential to a defendant's right to a fair trial."  State v. Concepcion, 111 N.J. 373, 379 (1988).  "Jury charges must provide a 'comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find.'"  State v. Singleton, 211 N.J. 157, 181-82 (2012) (quoting State v. Green, 86 N.J. 281, 287-88 (1981)).

In certain situations, jury instructions should be "molded" or "tailored" to the facts presented at trial.  State v. Robinson, 165 N.J. 32, 42 (2000).  Molding is necessary when "the statement of relevant law, when divorced from the facts, [is] potentially confusing or misleading to the jury."  Ibid.; see also State v. Gartland, 149 N.J. 456, 475-77 (1997) (requiring tailored instructions on a battered woman's right to self-defense and duty to retreat); Concepcion, 111 N.J. at 379-81 (holding jury charge on recklessness should have incorporated "all of defendant's relevant conduct").  While model jury charges are often useful, "[a]n instruction that is appropriate in one case may not be sufficient for another case. Ordinarily, the better practice is to mold the instruction in a manner that explains

the law to the jury in the context of the material facts of the case." Concepcion, 111 N.J. at 379. Indeed, even when defense counsel does not make a tailoring request, a defendant is at least "entitled to a charge consistent with his version of the facts" that does not simply "track[] the prosecution's theory of the case." State v. Martin, 119 N.J. 2, 16 (1990).

Nevertheless, "not every failure [to mold jury instructions] is fatal." State v. Tierney, 356 N.J. Super. 468, 482 (App. Div. 2003) (quoting State v. Bilek, 308 N.J. Super. 1, 10 (App. Div. 1998)). When the facts are neither complex nor confusing, a court does not have to provide an intricate discussion of the facts in the jury charge. Ibid. (citing State v. Morton, 155 N.J. 383, 422 (1998)); see also State v. White, 326 N.J. Super. 304, 315 (App. Div. 1999) (holding that although a more precise molding of the jury instructions to the facts would have been preferable, the charge was sufficient because "as a whole, [it] was consistent with the factual theories advanced by the parties").

When a defendant fails to object to a jury charge, we review for plain error, and "disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2). Plain error in a jury charge is "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the

defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Camacho, 218 N.J. 533, 554 (2014) (alteration in original) (quoting State v. Adams, 194 N.J. 186, 207 (2008)).

In reviewing any claim of error related to a jury charge, "[t]he charge must be read as a whole in determining whether there was any error." State v. Torres, 183 N.J. 554, 564 (2005) (citing State v. Jordan, 147 N.J. 409, 422 (1997)). In addition, the error "must be evaluated in light 'of the overall strength of the State's case.'" State v. Walker, 203 N.J. 73, 90 (2010) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)). Furthermore, defense counsel's failure to object to the jury instruction "gives rise to a presumption that he [or she] did not view [the charge] as prejudicial to his [or her] client's case." State v. McGraw, 129 N.J. 68, 80 (1992).

The trial court charged the jury on duress using the model jury charge. Defendant did not object to that charge, nor did he request a modification or tailoring of the charge. Nevertheless, defendant now argues that the failure to mold the charge was reversible error. Specifically, defendant argues that the trial court should have tailored the charge to include a reference to defendant's testimony that Jones put a gun to his back and ordered him to demand money

from the attendant. Defendant also argues that the charge should have been molded to Jones' testimony that he and defendant argued over who would point the gun at the attendant.

Having reviewed the complete charges in light of the testimony presented at trial, we discern no reversible error. The jury clearly understood that defendant was asserting the defense of duress. Defendant testified that Jones put the gun to his back and that he was frightened both during the robbery and the eluding. In that regard, the trial court told the jury that "defendant contends he is not guilty because at the time of the offense he acted under duress. In other words, he was coerced to commit each offense due to the use of or a threat to use unlawful force against him." Those facts were neither complex nor confusing. Accordingly, when the trial court instructed the jury using the model charge, there was no need to further tailor that charge because the duress defense was clear. In short, the court's instruction was sufficient, and we discern no error "clearly capable of producing an unjust result." R. 2:10-2.

B.   The Sentence

We review sentencing determinations under a deferential standard. State v. Grate, 220 N.J. 317, 337 (2015) (citing State v. Lawless, 214 N.J. 594, 606 (2013)). We "do[] not substitute [our] judgment for the judgment of the

sentencing court." Lawless, 214 N.J. at 606 (first citing State v. Cassady, 198 N.J. 165, 180 (2009); and then citing State v. O'Donnell, 117 N.J. 210, 215 (1989)). Instead, we will affirm a sentence unless

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [State v. Miller, 237 N.J. 15, 28 (2019) (alteration in original) (quoting State v. Fuentes, 217 N.J. 57, 70 (2014)).]

Two of the goals of the Criminal Code's sentencing provisions are to set ranges so predictable sentences are imposed and to eliminate disparity in sentences. State v. Palma, 219 N.J. 584, 592-93 (2014). "[A] sentence of one defendant not otherwise excessive is not erroneous merely because a co-defendant's sentence is lighter." State v. Hicks, 54 N.J. 390, 391 (1969) (first citing State v. Gentile, 41 N.J. 58 (1963); and then citing State v. Tyson, 43 N.J. 411 (1964)). Nevertheless, "there is an obvious sense of unfairness in having disparate punishment for equally culpable perpetrators." State v. Hubbard, 176 N.J. Super. 174, 177 (Resentencing Panel 1980). Accordingly, disparity in sentencing should be avoided because "grievous inequities in sentences destroy

12

a prisoner's sense of having been justly dealt with, as well as the public's confidence in the even-handed justice of our system." Hicks, 54 N.J. at 391.

When sentencing a defendant who has participated in a crime with a co-defendant or co-defendants, the sentencing court should determine whether the co-defendant is identical or substantially like defendant regarding all relevant sentencing criteria. State v. Roach, 146 N.J. 208, 233 (1996). In addition, a sentencing court should "inquire into the basis of the sentences imposed on the other defendant[,]" and "consider the length, terms, and conditions of the sentence imposed on the co-defendant." Ibid. "If the co-defendant is sufficiently similar, the court must give the sentence imposed on the co-defendant substantive weight when sentencing the defendant in order to avoid excessive disparity." Ibid.

Defendant contends that his sentence is excessive when compared to the probationary Drug Court sentence imposed on Jones. We disagree because the situations of defendant and Jones were dissimilar. Jones provided meaningful cooperation to the prosecutor, and he initially pled guilty to one count of second-degree robbery. After testifying against defendant, he was allowed to withdraw that guilty plea and he pled guilty to second-degree conspiracy to commit robbery. The sentencing court then considered his criminal history and other

appropriate aggravating and mitigating factors and sentenced him to special probation Drug Court.

In contrast, defendant contested his guilt and proceeded to trial on multiple charges. The jury convicted defendant of five charges, including four second-degree crimes. Unlike Jones, defendant was found guilty of two separate crimes: robbery and aggravated assault during eluding. Defendant had fifteen prior indictable convictions in New Jersey and one felony conviction in New York. By contrast, Jones had one prior conviction.

After merging two of the convictions, defendant was sentenced to sixteen years in prison for the robbery conviction and a consecutive term of ten years in prison for the aggravated assault while eluding conviction. NERA mandated that both those sentences have periods of parole ineligibility and parole supervision.

In imposing that sentence, the court found that defendant was subject to an extended term as a persistent offender under N.J.S.A. 2C:44-3(a). The court then found aggravating factors three, the risk of committing another offense; six, the extent of defendant's criminal record "and the seriousness of the offenses of which [he] has been convicted;" and nine, the need for deterrence. N.J.S.A. 2C:44-1(a)(3), (6), and (9). The court found no mitigating factors and

14

accordingly determined that the aggravating factors substantially outweighed the absent of mitigating factors.

The determinations on the aggravating and mitigating factors are supported by the record. The court also outlined the basis for the consecutive sentence, explaining that the assault that occurred during the eluding was separate with an independent objective from the robbery and that the crimes involved different victims. See State v. Torres, ___ N.J. ___, ___ (2021) (slip op. at 26) (noting sentencing courts are required to explain the imposition of consecutive sentences in an on-record statement of reasons, focusing on the sentence's overall fairness). Accordingly, we discern no error or abuse of discretion in the sentence and given the crimes committed the aggregate prison term of twenty-six years does not shock our judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15